# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JUAN CARLOS VELAZQUEZ CONTRERAS,

Calle Salinas de Gortari 418 Colonia Francisco I Madero 45530 San Pedro Tlaquepaque, Jalisco, Mexico

*Plaintiff,*

*vs.*

MARY DE ANDA-YBARRA, Field Office Director, El Paso Field Office, U.S. Immigration and Customs Enforcement (ICE)

U.S. Immigration and Customs Enforcement El Paso Field Office
11541 Montana Ave.
El Paso, Texas 79936

DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement

U.S. Immigration and Customs Enforcement
500 12th Street SW
Washington, D.C. 20536

MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security

U.S. Department of Homeland Security
245 Murray Lane SW
Washington, D.C. 20528,

all joined in their official capacities

*Defendants.*

Case No.

# COMPLAINT

Plaintiff, Juan Carlos Velazquez Contreras ("Mr. Velazquez Contreras" or "Plaintiff") complains and alleges against Defendants as follows:

## INTRODUCTION

Mr. Velazquez Contreras brings this action against Defendants to challenge an unlawful, arbitrary, and unconstitutional involuntary expulsion from the United States to Mexico executed by U.S. Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO"), El Paso Field Office, on or about May 9–10, 2026.

Mr. Velazquez Contreras has resided continuously in the United States for approximately twenty-two (22) years. He is the father of a ten-year-old United States citizen son who is diagnosed with autism and who depends on his father for daily care and emotional support. Mr. Velazquez Contreras has no criminal history of any kind.

On or about April 29, 2026, Mr. Velazquez Contreras was arrested by ICE and induced by a threat of prolonged detention in ICE custody to sign four (4) documents, including, upon information and belief, Form I-826—a document that would have resulted in a waiver of his right to a hearing before an Immigration Judge and his immediate return to Mexico. When he signed the documents, Mr. Velazquez Contreras did not understand their nature or legal consequence; he did not understand that he was waiving his right to appear before an Immigration Judge; he was not represented by counsel and was denied his request to call his family for their advice; he was not provided with meaningful interpretation or translation; and he was not advised of his eligibility for cancellation of removal and a green card under 8 U.S.C. § 1229b(b)(1)(A)-(D).

Critically, beginning May 4, 2026, Mr. Velazquez Contreras's immigration attorney in Utah withdrew the documents Mr. Velazquez Contreras had signed when he transmitted to

ICE/ERO El Paso, via email and overnight mail, a comprehensive *Emergency Request for Stay of Removal and Withdrawal of Voluntary Return,* accompanied by a filed Form G-28 Notice of Appearance. Counsel transmitted four separate communications to ElPaso.Outreach@ice.dhs.gov between May 4 and May 9, 2026, including explicit notice on the evening of May 9, 2026, that a Temporary Restraining Order and Petition for Writ of Habeas Corpus would be filed if Mr. Velazquez Contreras's departure was not stayed.

Notwithstanding four written communications from counsel of record—ICE/ERO El Paso executed Mr. Velazquez Contreras's involuntary expulsion from the United States to Mexico on the evening of May 9, or the early morning of May 10, 2026 (the "**Involuntary Expulsion**"). He was transported from El Paso, Texas, to Palenque, Chiapas, Mexico.

By the time of his Involuntary Expulsion, Mr. Velazquez Contreras had already withdrawn the documents he had signed, including any waiver of his right to appear before an immigration judge; **he was *never* put in removal proceedings in Immigration Court under 8 U.S.C. § 1229a; and *an order of removal was never issued.*** Accordingly, his Involuntary Expulsion was unlawful.

Based on the claims for relief as alleged, this action seeks: (a) declaratory relief; (b) a writ of mandamus; and (c) preliminary and permanent injunctive relief requiring Defendants to: (i) facilitate Mr. Velazquez Contreras's immediate return to the United States at the government's expense, including, but not limited to issuing travel documentation and coordinating with Mexican authorities as necessary; (ii) file periodic reports until he is safely returned; (iii) provide Mr. Velazquez Contreras with all of the process to which he would have been entitled had he not been involuntarily expelled, including a hearing before an Immigration Judge under 8 U.S.C. § 1229a, at which he may present his claim for cancellation of removal

under 8 U.S.C. § 1229b(b); and (iv) prohibiting Defendants from using the withdrawn documents against Mr. Velazquez Contreras in any future immigration proceeding and from treating the Involuntary Expulsion as triggering or establishing any period of inadmissibility under 8 U.S.C. § 1182(a)(9)(A).

## PARTIES

1. Plaintiff, JUAN CARLOS VELAZQUEZ CONTRERAS, is a citizen of Mexico who has resided continuously in the United States for approximately twenty-two (22) years. His Alien Registration Number is A222-557-147. He was involuntarily expelled from the United States to Palenque, Chiapas, Mexico, on or about May 10, 2026. He is currently present in Mexico as a direct result of the unlawful agency action challenged herein.

2. Defendant, MARY DE ANDA-YBARRA, is the Field Office Director, El Paso Office, U.S. Immigration and Customs Enforcement, and is sued in her official capacity. This Defendant is the official to whom Mr. Velazquez Contreras’s counsel's emergency communications were directed.

3. Defendant, DAVID VENTURELLA, is the Acting Director of U.S. Immigration and Customs Enforcement and is sued in his official capacity.

4. Defendant, MARKWAYNE MULLIN, is the Secretary of the Department of Homeland Security and is sued in his official capacity. Secretary Mullin has ultimate supervisory authority over ICE and ERO.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1361 (Mandamus Act); 5 U.S.C. §§ 701–706 (Administrative Procedure

Act); 28 U.S.C. § 2201 (Declaratory Judgment Act); and 28 U.S.C. § 1346 (United States as defendant).

6. This Court retains jurisdiction notwithstanding the Involuntary Expulsion which was executed in defiance of counsel's documented withdrawal of Mr. Velazquez Contreras’s signed documents, including any waiver of his right to appear before an immigration judge, and without an order of removal, which constitutes a continuing violation of Mr. Velazquez Contreras’s rights. Mr. Velazquez Contreras suffers ongoing collateral consequences, including, but not limited to, invalid withdrawn documents of record that will prejudice future immigration proceedings, disruption of continuous presence for cancellation eligibility, and separation from his United States citizen dependent child.

7. Venue is proper in this United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391.

## **FACTUAL ALLEGATIONS**

*The Arrest.*

8. On or about the morning of Wednesday, April 29, 2026, at approximately 6:40 a.m., Mr. Velazquez Contreras arrived at his place of employment in Park City, Utah. He had just parked his vehicle when a government vehicle pulled up and blocked his path.

9. ICE agents approached Mr. Velazquez Contreras and immediately demanded to see his documents. The agents did not state that they had a warrant. They did not identify Mr. Velazquez Contreras by name. They did not advise him of any rights.

10. Mr. Velazquez Contreras's father, who was traveling with him to work that day, was simultaneously approached and detained by a separate ICE agent. Both were placed in the agents' vehicle. The entire roadside encounter lasted approximately two minutes.

11. During the encounter, the agents appeared confused about Mr. Velazquez Contreras's identity, in part because his father shares the same first name, "Juan."

12. At some point during transport, Mr. Velazquez Contreras was handcuffed so tightly that it caused pain to his hands and he was unable to use them.

13. When Mr. Velazquez Contreras attempted to call his wife during this time, an agent took his phone and told him he was not permitted to make a call.

14. Both men were transported to a staging location in Wyoming where they were handcuffed and placed in a vehicle with approximately ten (10) other individuals and were transported to ERO El Paso Camp East Montana in El Paso, Texas.

*Processing, Detention and Coerced Signing*

15. During transport and processing, agents asked whether Mr. Velazquez Contreras understood English. He told them he did not. It was only after his father—who speaks limited English—began speaking with them in Spanish that the agents seemed to realize Mr. Velazquez Contreras and his father spoke Spanish and began addressing Mr. Velazquez Contreras in Spanish as well.

16. Upon arrival, Mr. Velazquez Contreras was processed in a group of approximately sixty (60) individuals. He was called for individual processing and presented by an ICE officer with two options:

(a) Request a hearing before an Immigration Judge, with the threat that he would languish in ICE detention for up to eighteen (18) months; or

(b) Sign documents and be released to Mexico within approximately four (4) days.

17. Mr. Velazquez Contreras asked to consult with his family before making a decision. The officer told him he was not allowed to do that; that he was required to decide immediately.

18. At no point during processing was Mr. Velazquez Contreras:

(a) Advised of his right to consult with or be represented by counsel;

(b) Advised of his right to a hearing before an Immigration Judge under 8 U.S.C § 1229a;

(c) Informed of his eligibility for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(A)-(D);

(d) Provided an adequate interpreter or explanation in a language he fully understood; or

(e) Given meaningful time or opportunity to consider the legal consequences of the documents presented to him.

19. Mr. Velazquez Contreras was presented with four (4) documents to sign. Upon information and belief one of those documents was ICE Form I-826 which includes provisions waiving the right to appear before an Immigration Judge and consent to return to one's country of origin.

20. In a landmark 2014 class action Settlement Agreement in the U.S. District Court for the Central District of California,[1] ICE agreed to revise its Form I-826 to include the following language: "If you choose to return to your country, you may change your mind and instead request a hearing before a judge in Immigration Court at any time before your departure

[1] Case No. 2:13-cv-03972-JAK-PLA, Dkt 90-4.

from the United States. You should let an immigration officer know immediately if you change your mind."

21. Upon information and belief, Mr. Velazquez Contreras signed this revised version of Form I-826.

22. The processing officer did not explain the contents of the documents that were presented to Mr. Velazquez Contreras. Rather, she told him that the documents were simply confirming what had already been explained—that everything was fine. She did not inform him that he was executing a waiver of his right to appear before an Immigration Judge.

23. The documents signed by Mr. Velazquez Contreras on or about April 29, 2026, were not knowingly, intelligently, or voluntarily executed. They were legally defective and invalid. *See, e.g., United States v. Ramos*, 623 F.3d 672 (9th Cir. 2010); *Matter of Shaughnessy*, 12 I&N Dec. 810 (BIA 1968).

*Counsel's Emergency Communications—Actual Notice to the Agency*

24. On May 4, 2026, at approximately 8:00-9:00 p.m. Mountain Daylight Time, Mr. Velazquez Contreras's attorney, Adam L. Crayk of Stowell Crayk in Millcreek, Utah, withdrew the documents Mr. Velazquez Contreras had signed (the withdrawn documents are hereafter referred to as the "**Withdrawn Documents**") by transmitting to ICE/ERO El Paso via email to ElPaso.Outreach@ice.dhs.gov and via overnight delivery, a comprehensive *Emergency Request for Stay of Removal and Withdrawal of Voluntary Return*, accompanied by a signed Form G-28 Notice of Entry of Appearance as Attorney. A true and correct copy of Mr. Crayk's email with attachments is attached hereto as Exhibit "A."

25. On May 9, 2026, at 5:19 p.m. Mountain Daylight Time, Mr. Crayk transmitted the same *Emergency Request for Stay of Removal and Withdrawal of Voluntary Return*,

accompanied by a signed Form G-28, to ICE/ERO El Paso via email ElPaso.Outreach@ice.dhs.gov. A true and correct copy of his email with attachments is attached hereto as Exhibit "B."

26. Also on May 9, 2026, at 5:29 p.m. Mountain Daylight Time, Mr. Crayk sent an email to the El Paso Field Office Director and ERO El Paso Duty Officer at ElPaso.Outreach@ice.dhs.gov which read:

**O: ERO El Paso Field Office Director and Duty Officer**
messages

**dam Crayk** <adam@lawscb.com>
›: ElPaso.Outreach@ice.dhs.gov

Sat, May 9, 2026 at 5:29 P

TO: ERO El Paso Field Office Director and Duty Officer EMAIL: ElPaso.Outreach@ice.dhs.gov PHONE: (915) 208-0980 | (915) 637-9270 | (915) 225-1901 Dear Field Office Director and ERO El Paso Duty Officer: This office represents Juan Carlos Velazquez Contreras, A-Number: A222-557-147, currently detained at ERO El Paso Camp East Montana. We have received notice that ICE/ERO intends to remove Mr. Velazquez Contreras THIS EVENING, May 9, 2026. We write to demand an IMMEDIATE STAY OF REMOVAL. IMPORTANT NOTICE: On May 4, 2026, this office transmitted to your office via email and overnight mail a comprehensive Emergency Request for Stay of Removal and Withdrawal of Voluntary Return, signed by Adam L. Crayk, Utah Bar No. 9443, Stowell Crayk PLLC. A copy of that letter and our filed G-28 (Notice of Appearance) are attached to this email. We have received no response. Mr. Velazquez Contreras CANNOT be removed tonight for the following reasons: 1. VOLUNTARY RETURN IS REVOKED AND INVALID. The voluntary return signed on or about April 29, 2026 was not knowingly, intelligently, or voluntarily executed. Mr. Velazquez Contreras was not provided adequate interpretation, was not represented by counsel at signing, and was not informed of his eligibility for relief. The waiver is legally defective under United States v. Ramos, 623 F.3d 672 (9th Cir. 2010) and Matter of Shaughnessy, 12 I&N Dec. 810 (BIA 1968). 2. U.S. CITIZEN CHILD — EXCEPTIONAL HARDSHIP. Mr. Velazquez Contreras is the father of a ten-year-old United States citizen son diagnosed with learning disabilities who depends on his father for daily care and emotional support. Removal would cause exceptional and extremely unusual hardship under INA § 240A(b)(1)(D). See Matter of Andazola-Rivas, 23 I&N Dec. 319 (BIA 2002). 3. 25 YEARS OF CONTINUOUS RESIDENCE. Mr. Velazquez Contreras has resided continuously in the United States for approximately 25 years, far exceeding the 10-year requirement for non-LPR cancellation of removal under INA § 240A(b). 4. DUE PROCESS. Removal without consideration of this emergency request would violate Mr. Velazquez Contreras's Fifth Amendment due process rights and 8 C.F.R. § 241.6. WE DEMAND that ICE/ERO: (1) IMMEDIATELY stay removal pending review of this request; (2) Confirm in writing that no removal will occur tonight; and (3) Contact undersigned counsel immediately by phone or email. Undersigned counsel is available immediately: Adam L. Crayk | adam@lawscb.com | (801) 944-3459 Stowell Crayk, PLLC | 4252 S. 700 E., Millcreek, UT 84107 If we do not receive a response before removal is effectuated, we will seek immediate judicial relief. Respectfully submitted, Adam L. Crayk, Utah Bar No. 9443 Stowell Crayk, PLLC adam@lawscb.com (801) 944-3459 ATTACHMENTS: 1. Emergency Stay Letter dated May 4, 2026 2. Form G-28 — Notice of Appearance (signed 05/04/2026)

A true and correct copy of Mr. Crayk's email is attached hereto as Exhibit "C."

27. Also on May 9, 2026, at 6:23 p.m. Mountain Daylight Time, Mr. Crayk sent an email to ElPaso.Outreach@ice.dhs.gov which read: "As Notice, I have provided the TRO and the Habeas which will be filed shortly." A true and correct copy of his email with attachments is attached hereto as Exhibit "D."

28. ICE/ERO El Paso did not respond to, or acknowledge receipt of, any of counsel's communications. ICE/ERO El Paso did not contact Mr. Crayk by phone or email.

*Removal Executed Despite Actual Notice*

29. On the evening of May 9, 2026, at approximately 8:00–9:00 p.m., Mr. Velazquez Contreras was informed that he and four others were being flown to Mexico that night. He immediately contacted his daughter, who confirmed that Mr. Crayk had withdrawn the documents he had signed, including any waiver of his right to appear before an Immigration Judge.

30. Mr. Velazquez Contreras communicated this information to the detention guards. He was brought before an ICE officer at the El Paso facility. He informed her directly that he had an attorney and that his attorney had withdrawn the documents he had signed.

31. The officer showed Mr. Velazquez Contreras the documents and stated he had signed them. When he acknowledged having signed but explained that his attorney had withdrawn the signed documents, the officer told him in effect that he was either going to board the aircraft voluntarily or she would force him to board.

32. Mr. Velazquez Contreras was not provided an opportunity to contact his attorney, to appear before an Immigration Judge, or to seek judicial relief before being placed on the aircraft. Mr. Velazquez Contreras was the last of the group who boarded onto the aircraft; two ICE agents were present on the plane, and he again told them that his attorney had stopped the Involuntary Expulsion. One of the agents again told him that he had to board regardless.

33. Mr. Velazquez Contreras was flown from El Paso, Texas. The flight stopped near Matamoros, Mexico, before he was transported to Palenque, Chiapas, Mexico, where he arrived on or about May 10, 2026.

34. Mr. Velazquez Contreras was *never* placed in removal proceedings, pursuant to 8 U.S.C. § 1229a.

35. There has *never* been an order of removal issued for Mr. Velazquez Contreras.

*Plaintiff's Eligibility for Relief — Failure to Advise*

36. Before his Involuntary Expulsion, Mr. Velazquez Contreras had resided continuously in the United States for approximately twenty-two (22) years, substantially exceeding the ten-year continuous presence requirement for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(A).

37. Mr. Velazquez Contreras has been a person of good moral character throughout his presence in the United States and meets the requirement of 8 U.S.C. § 1229b(b)(1)(B).

38. Mr. Velazquez Contreras has no criminal history and meets the requirement of 8 U.S.C. § 1229b(b)(1)(C).

39. Mr. Velazquez Contreras is the father of a ten-year-old United States citizen son who is diagnosed with autism. His son depends on him for daily care and emotional support. His Involuntary Expulsion constitutes exceptional and extremely unusual hardship to a qualifying United States citizen child within the meaning of 8 U.S.C. § 1229b(b)(1)(D).

40. Mr. Velazquez Contreras presents no adverse factors that would warrant denial of discretionary relief under 8 U.S.C. § 1229b(b)(1)(A)-(D) (Cancellation of removal and adjustment of status for certain nonpermanent residents).

41. Had Mr. Velazquez Contreras realized he was waiving his right to appear before an Immigration Judge and was consenting to return to Mexico, or had he been informed of his eligibility for cancellation of removal under 8 U.S.C. § 1229b(b) once placed in removal

proceedings, he would not have signed the Withdrawn Documents. No officer at any stage of the arrest, processing, detention, or removal advised him of this potential relief.

## CLAIMS FOR RELIEF

### COUNT I

### (Administrative Procedure Act - Arbitrary and Capricious Agency Action 5 U.S.C. § 706(2)(A))

42. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

43. The Administrative Procedure Act requires courts to set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

44. Mr. Velazquez Contreras's Involuntary Expulsion on May 9–10, 2026, was arbitrary and capricious.

45. The documents Mr. Velazquez Contreras had signed were withdrawn prior to his Involuntary Expulsion.

46. Mr. Velazquez Contreras was *never* placed in removal proceedings, pursuant to 8 U.S.C. § 1229a.

47. There has *never* been an order of removal issued for Mr. Velazquez Contreras.

48. ICE/ERO El Paso had actual written notice — via four separate communications from counsel of record over a six-day period — that the underlying signed documents were legally defective and invalid, had been formally withdrawn, and that federal judicial relief was imminent. ICE/ERO El Paso did not respond to any of these communications. They did not investigate the withdrawal claim. They did not stay departure pending review. They executed Involuntary Expulsion anyway.

49. A reasoned agency decision-maker, confronted with four written communications from an attorney of record withdrawing signed documents, including any waiver of the right to appear before an Immigration Judge, express notice of imminent federal filing, and no order of removal, would not proceed with Involuntary Expulsion. No rational basis exists for the agency's failure to respond or to stay departure pending review.

50. The Involuntary Expulsion constitutes a discrete, final agency action subject to APA review.

51. The Withdrawn Documents and the Involuntary Expulsion must be set aside.

52. Defendants must also (i) facilitate Mr. Velazquez Contreras's immediate return to the United States at the government's expense, including, but not limited to issuing travel documentation and coordinating Mexican authorities as necessary; (ii) file periodic reports until he is safely returned; and (iii) provide Mr. Velazquez Contreras with all of the process to which he would have been entitled had he not been involuntarily expelled, including a hearing before an Immigration Judge under 8 U.S.C. § 1229a, at which he may present his claim for cancellation of removal under 8 U.S.C. § 1229b(b).

53. Defendants must also be prohibited from using the Withdrawn Documents against Mr. Velazquez Contreras in any future immigration proceeding and from treating the Involuntary Expulsion as triggering or establishing any period of inadmissibility under 8 U.S.C. § 1182(a)(9)(A).

54. Mr. Velazquez Contreras is entitled to such other and further relief as may be proven at trial.

## COUNT II

**(Administrative Procedure Act — Action Contrary to Constitutional Right 5 U.S.C. § 706(2)(B)**

55. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

56. The APA requires courts to set aside agency action contrary to a constitutional right, power, privilege, or immunity. 5 U.S.C. § 706(2)(B).

57. The Involuntary Expulsion violated Mr. Velazquez Contreras's Fifth Amendment right to procedural and substantive due process. Mr. Velazquez Contreras had a protected liberty interest in his approximately twenty-two (22) years of continuous residence in the United States and in the opportunity to present his cancellation of removal claim before an Immigration Judge once placed in removal proceedings. *See Mathews v. Eldridge*, 424 U.S. 319 (1976).

58. Under *Mathews v. Eldridge* balancing: (a) the private interest at stake in this case is extraordinary—22 years of residence, an autistic U.S. citizen child, and potential cancellation relief; (b) the risk of erroneous deprivation was high, given a coerced signature on unexplained documents with no counsel; and (c) the government's interest in expelling a non-criminal respondent with a pending legal challenge and documented revocation is minimal. The process afforded was constitutionally inadequate.

59. The Involuntary Expulsion constitutes a discrete, final agency action subject to APA review.

60. The Withdrawn Documents and the Involuntary Expulsion must be set aside.

61. Defendants must also (i) facilitate Mr. Velazquez Contreras's immediate return to the United States at the government's expense, including, but not limited to issuing travel documentation and coordinating with Mexican authorities as necessary; (ii) file periodic reports

until he is safely returned; and (iii) provide Mr. Velazquez Contreras with all of the process to which he would have been entitled had he not been involuntarily expelled, including a hearing before an Immigration Judge under 8 U.S.C. § 1229a, at which he may present his claim for cancellation of removal under 8 U.S.C. § 1229b(b).

62. Defendants must also be prohibited from using the Withdrawn Documents against Mr. Velazquez Contreras in any future immigration proceeding and from treating the Involuntary Expulsion as triggering or establishing any period of inadmissibility under 8 U.S.C. § 1182(a)(9)(A).

63. Mr. Velazquez Contreras is entitled to such other and further relief as may be proven at trial.

**COUNT III**

**(Administrative Procedure Act — Ultra Vires Action Not Authorized By Immigration and Nationality Act, 5 U.S.C. § 706(2)(C))**

64. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

65. The APA requires courts to set aside agency action that is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. 5 U.S.C. § 706(2)(C).

66. Mr. Velazquez Contreras's signed documents were withdrawn prior to his Involuntary Expulsion.

67. Mr. Velazquez Contreras was *never* placed in removal proceedings, pursuant to 8 U.S.C. § 1229a.

68. There has *never* been an order of removal issued for Mr. Velazquez Contreras.

69. ICE/ERO exceeded its authority under the Immigration and Nationality Act and related regulations and had absolutely no right according to law to remove Mr. Velazquez Contreras. Its actions were, therefore, *ultra vires.*

70. The Involuntary Expulsion constitutes a discrete, final agency action subject to APA review.

71. The Withdrawn Documents and the Involuntary Expulsion must be set aside.

72. Defendants must also (i) facilitate Mr. Velazquez Contreras's immediate return to the United States at the government's expense, including, but not limited to issuing travel documentation and coordinating with Mexican authorities as necessary; (ii) file periodic reports until he is safely returned; and (iii) provide Mr. Velazquez Contreras with all of the process to which he would have been entitled had he not been involuntarily expelled, including a hearing before an Immigration Judge under 8 U.S.C. § 1229a, at which he may present his claim for cancellation of removal under 8 U.S.C. § 1229b(b).

73. Defendants must also be prohibited from using the Withdrawn Documents against Mr. Velazquez Contreras in any future immigration proceeding and from treating the Involuntary Expulsion as triggering or establishing any period of inadmissibility under 8 U.S.C. § 1182(a)(9)(A).

74. Mr. Velazquez Contreras is entitled to such other and further relief as may be proven at trial.

**COUNT IV**

**(Fifth Amendment — Procedural Due Process**
**(Standalone Constitutional Claim))**

75. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

76. The Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person of liberty without due process of law.

77. Mr. Velazquez Contreras was deprived of his liberty—his continuous residence, his family unity, and his opportunity to seek cancellation of removal once placed in removal proceedings—without constitutionally adequate process. He was given no meaningful opportunity to consult counsel, or to seek advice concerning his rights or potential relief; he was not provided with an explanation of the documents he signed; and he was not afforded any recourse when his attorney's documented waiver of his right to appear before an Immigration Judge and consent to return to Mexico was before ICE/ERO. His Involuntary Expulsion was effectuated by threats of physical force and prolonged detention.

78. Mr. Velazquez Contreras's signed documents were withdrawn prior to his involuntary expulsion.

79. Mr. Velazquez Contreras was *never* placed in removal proceedings, pursuant to 8 U.S.C. § 1229a.

80. There has *never* been an order of removal issued for Mr. Velazquez Contreras.

81. The Withdrawn Documents and the Involuntary Expulsion must be set aside.

82. Defendants must also (i) facilitate Mr. Velazquez Contreras's immediate return to the United States at the government's expense, including, but not limited to issuing travel documentation and coordinating with Mexican authorities as necessary; (ii) file periodic reports until he is safely returned; and (iii) provide Mr. Velazquez Contreras with all of the process to which he would have been entitled had he not been involuntarily expelled, including a hearing before an Immigration Judge under 8 U.S.C. § 1229a, at which he may present his claim for cancellation of removal under 8 U.S.C. § 1229b(b).

83. Defendants must also be prohibited from using the Withdrawn Documents against Mr. Velazquez Contreras in any future immigration proceeding and from treating the Involuntary Expulsion as triggering or establishing any period of inadmissibility under 8 U.S.C. § 1182(a)(9)(A).

84. Mr. Velazquez Contreras is entitled to such other and further relief as may be proven at trial.

**COUNT V**

**(Failure to Advise of Eligibility for Cancellation of Removal 8 U.S.C. § 1229b(b))**

85. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

86. Mr. Velazquez Contreras prima facie qualifies for cancellation of removal and a green card under 8 U.S.C. § 1229b(b)(1)(A)-(D) once placed in removal proceedings: he has approximately twenty-two (22) years of continuous presence in the United States; he has good moral character; he has no disqualifying convictions; and his removal would cause exceptional and extremely unusual hardship to his autistic ten-year-old United States citizen son.

87. No officer at any stage of Mr. Velazquez Contreras's arrest, processing, detention, or Involuntary Expulsion advised him of his potential eligibility for this relief. The failure to advise—combined with the coerced waiver of his right to a hearing before an Immigration Judge—constitutes a denial of his statutory right to present this claim before an Immigration Judge.

88. The Withdrawn Documents and the Involuntary Expulsion must be set aside.

89. Defendants must also (i) facilitate Mr. Velazquez Contreras's immediate return to the United States at the government's expense, including, but not limited to issuing travel

documentation and coordinating with Mexican authorities as necessary; (ii) file periodic reports until he is safely returned; and (iii) provide Mr. Velazquez Contreras with all of the process to which he would have been entitled had he not been involuntarily expelled, including a hearing before an Immigration Judge under 8 U.S.C. § 1229a, at which he may present his claim for cancellation of removal under 8 U.S.C. § 1229b(b).

90. Defendants must also be prohibited from using the Withdrawn Documents against Mr. Velazquez Contreras in any future immigration proceeding and from treating the Involuntary Expulsion as triggering or establishing any period of inadmissibility under 8 U.S.C. § 1182(a)(9)(A).

91. Mr. Velazquez Contreras is entitled to such other and further relief as may be proven at trial.

**COUNT VI**

**(*Accardi Doctrine—Reversal of Agency Action*)**

92. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

93. 8 C.F.R. § 240.25(c) reads in relevant part: "Voluntary departure may not be granted unless the alien requests such voluntary departure and agrees to its terms and conditions."

94. The Withdrawn Documents were not knowingly, intelligently, or voluntarily executed, or agreed to as herein alleged.

95. The *Accardi* doctrine,[2] is a foundational principle of administrative law. It requires agencies to follow their own procedures, rules, and instructions.

---

[2] *U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct.499, 74 L.Ed 561(1954).

96. The Department of Homeland Security failed to follow 8 C.F.R. § 240.25(c).

97. The Withdrawn Documents and the Involuntary Expulsion must be set aside.

98. Defendants must also (i) facilitate Mr. Velazquez Contreras's immediate return to the United States at the government's expense, including, but not limited to issuing travel documentation and coordinating with Mexican authorities as necessary; (ii) file periodic reports until he is safely returned; and (iii) provide Mr. Velazquez Contreras with all of the process to which he would have been entitled had he not been involuntarily expelled, including a hearing before an Immigration Judge under 8 U.S.C. § 1229a, at which he may present his claim for cancellation of removal under 8 U.S.C. § 1229b(b).

99. Defendants must also be prohibited from using the Withdrawn Documents against Mr. Velazquez Contreras in any future immigration proceeding and from treating the Involuntary Expulsion as triggering or establishing any period of inadmissibility under 8 U.S.C. § 1182(a)(9)(A).

100. Mr. Velazquez Contreras is entitled to such other and further relief as may be proven at trial.

**COUNT VII**
**(Declaratory Judgment)**

101. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

102. An actual and justiciable controversy exists between Mr. Velazquez Contreras and Defendants as to whether the Withdrawn Documents were invalid, and whether Mr. Velazquez Contreras's Involuntary Expulsion, including without an order of removal, was arbitrary, capricious, an abuse of discretion, contrary to law, contrary to agency regulations, and a violation of his constitutional right of due process.

103. Mr. Velazquez Contreras is entitled to declaratory relief, pursuant to 28 U.S.C §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure, including declaratory judgment that:

a. The Withdrawn Documents were not voluntary, were invalid, and had been withdrawn prior to Mr. Velazquez Contreras's Involuntary Expulsion;

b. Mr. Velazquez Contreras's Involuntary Expulsion was arbitrary, capricious, an abuse of discretion, contrary to law, contrary to agency regulations, and a violation of his constitutional right of due process;

c. The Withdrawn Documents and Involuntary Expulsion must be set aside;

d. Mr. Velazquez Contreras is entitled to relief under the Administrative Procedure Act and *Accardi* doctrine;

e. Defendants must (i) facilitate Mr. Velazquez Contreras's immediate return to the United States at the government's expense, including, but not limited to issuing travel documentation and coordinating with Mexican authorities as necessary; (ii) file periodic reports until he is safely returned; and (iii) provide Mr. Velazquez Contreras with all of the process to which he would have been entitled had he not been involuntarily expelled, including a hearing before an Immigration Judge under 8 U.S.C. § 1229a, at which he may present his claim for cancellation of removal under 8 U.S.C. § 1229b(b).

f. Defendants must also be prohibited from using the Withdrawn Documents against Mr. Velazquez Contreras in any future immigration proceeding and from treating the Involuntary Expulsion as triggering or establishing any period of inadmissibility under 8 U.S.C. § 1182(a)(9)(A).

## COUNT VIII
## (Mandamus Act – 28 U.S.C. § 1361)

104. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

105. A writ of mandamus, pursuant to 28 U.S.C. § 1361, is necessary and appropriate to compel Defendants to perform their duties owed to Mr. Velazquez Contreras. More specifically, a writ of mandamus should issue ordering and directing Defendants to do the following:

a. Set aside the Withdrawn Documents and Involuntary Expulsion;

b. Facilitate the immediate return of Mr. Velazquez Contreras to the United States at the government's expense, including, but not limited to issuing travel documentation and coordinating with Mexican authorities as necessary;

c. File periodic reports until he is safely returned;

d. Provide Mr. Velazquez Contreras with all of the process to which he would have been entitled had he not been involuntarily expelled, including a hearing before an Immigration Judge under 8 U.S.C. § 1229a, at which he may present his claim for cancellation of removal under 8 U.S.C. § 1229b(b); and

e. Not use the Withdrawn Documents against Mr. Velazquez Contreras in any future immigration proceeding or treat the Involuntary Expulsion as triggering or establishing any period of inadmissibility under 8 U.S.C. § 1182(a)(9)(A).

## COUNT IX
## (Injunctive Relief)

106. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

107. Mr. Velazquez Contreras is entitled to temporary, preliminary, and permanent injunctive relief:

a. Directing Defendants to set aside the Withdrawn Documents and Involuntary Expulsion;

b. Directing Defendants to facilitate the immediate return of Mr. Velazquez Contreras to the United States at the government's expense, including, but not limited to issuing travel documentation and coordinating with Mexican authorities as necessary;

c. Directing Defendants to file periodic reports until he is safely returned;

d. Affording Mr. Velazquez Contreras all of the process to which he would have been entitled had he not been involuntarily expelled, thus restoring Mr. Velazquez Contreras to the position he occupied prior to the Involuntary Expulsion—specifically, to provide him with a hearing before an Immigration Judge under 8 U.S.C. § 1229a at which he may present his claim for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(A)-(D); and

e. Enjoining Defendants from using the Withdrawn Documents against Mr. Velazquez Contreras in any future immigration proceeding or treating the Involuntary Expulsion as triggering or establishing any period of inadmissibility under 8 U.S.C. § 1182(a)(9)(A)

*Likelihood of Success on the Merits.*

108. Mr. Velazquez Contreras is likely to succeed on the merits of his claims, including his claims under the Administrative Procedure Act and his claim that his due process rights were violated when he was Involuntarily Expelled.

109. The coercive tactics ICE uses to induce non-citizens to sign forms for voluntary departure have been known for years. *See Lopez-Venegas v. Johnson*, Case No. 2:13-cv-03972, 2014 WL 12772087 (C.D. Cal. Aug. 28, 2014); *Lopez-Venegas v. Johnson*, Case No. 2:13-cv-03972, 2015 WL 13916876 (C.D. Cal. Feb. 25, 2015).

110. Mr. Velazquez Contreras was presented with four (4) documents to sign, including, upon information and belief, revised Form I-826, which stated that if he initially chose to return to his home country he could change his mind and request a hearing before a judge in Immigration Court at any time before his departure.

111. The processing officer did not explain the contents of the documents. Rather, she told him that the documents were simply confirming what had already been explained — that everything was fine. She did not inform him that he was executing a waiver of his right to appear before an Immigration Judge and consent to return to Mexico.

112. Mr. Velazquez Contreras was coerced into signing the Withdrawn Documents. The consequences of signing were not explained, including his eligibility for cancellation of removal. He was not allowed to contact his family before signing to seek their advice, and he was told that he would face prolonged detention in ICE custody if he elected a hearing in Immigration Court.

113. The Supreme Court has held that a noncitizen must be permitted to withdraw a voluntary departure request before departure in order to safeguard rights that might be available in immigration proceedings. *See Dada v. Mukasey*, 554 U.S. 1, 128 S.Ct. 2307, 171 L.Ed.2d 178 (2008). Other courts have consistently held that a waiver of the right to a hearing is invalid where the individual lacked a full understanding of the rights being waived. *See, e.g., Ramos*, *supra*, 623 F.3d 672; *Matter of Shaughnessy*, *supra*, 12 I&N Dec. 810.

114. **Mr. Velazquez Contreras withdrew his signed documents before he departed the United States**.

115. Because Mr. Velazquez Contreras was not a candidate for expedited removal and had committed no crimes warranting removal, the only lawful way to remove Mr. Velazquez Contreras absent his voluntary consent was a final order of removal issued by an Immigration Judge.

116. "An order of removal is the vehicle by which the Executive branch retains the power conferred by Congress under the INA to remove a noncitizen from the United States against his will. *See* 8 U.S.C. § 1231(a)(1)(A). Such power is tantamount to an order of deportation, defined as "an *order* 'concluding that the [noncitizen] is deportable or ordering deportation.'" "[T]he existence of a removal order is fundamental to determining whether, and to where, a noncitizen may be removed." *Abrego Garcia v. Noem*, 811 F.Supp.3d 741, 756-57 (D. MD. 2025).

117. **Mr. Velazquez Contreras was never placed in removal proceedings. An order of removal was never issued.**

118. Mr. Velazquez Contreras was entitled to the rights of due process that Congress has provided by statute. *See DHS v. Thuraissigiam*, 591 U.S. 103, 140, 140 S.Ct. 1959, 107 L.Ed.2d 427 (2020). These rights required a final order of removal. *See* 8 U.S.C. § 1229a (governing removal); 8 C.F.R. § 1241.1 (governing administrative checkpoints that make the order administratively final); and 8 U.S.C. § 1231 (governing physical detention, release, and removal of non-citizen ordered removed).

119. The Department of Homeland Security had absolutely no authority to involuntarily expel Mr. Velazquez Contreras from the United States.

*Return to the United States is the Appropriate Remedy.*

120. The proper remedy for Mr. Velazquez Contreras is an order requiring Defendants to facilitate Mr. Velazquez Contreras's immediate return to the United States at the government's expense, including, but not limited to issuing travel documentation and coordinating with Mexican authorities as necessary, file periodic reports until he is safely returned, and provide Mr. Velazquez Contreras with all of the process to which he would have been entitled had he not been involuntarily expelled, including a hearing before an Immigration Judge under 8 U.S.C. § 1229a, at which he may present his claim for cancellation of removal under 8 U.S.C. § 1229b(b). *See Noem v. Abrego Garcia*, 145 S.Ct. at 1019 (Sotomayor, J., concurring) ("I agree with the Court's order that the proper remedy is to provide Abrego Garcia with all the process to which he would have been entitled had he not been unlawfully removed."). This necessarily includes placing Mr. Velazquez Contreras in removal proceedings with the statutory right to apply for cancellation of removal.

121. When a noncitizen has been Involuntarily Expelled from this country without any legal process, a district court may properly require the Government to "facilitate" the person's return to the United States, and to ensure that his case is handled as it would have been had he not been improperly sent to another country. *See Martinez-Andino v. Dep't of Homeland Sec.*, No. 26-cv-1208 (BAH), 2026 WL 1801137, *17 (D.D.C. June 23, 2026); *see also Noem v. Abrego Garcia*, 145 S.Ct. 1017, 1018 (2025); *D.V.D. v. Dep't of Homeland Sec.*, 784 F.Supp.3d 401, 406 (D. Mass. 2025); *Gordon v. Barr*, 965 F.3d 252, 261 (4th Cir. 2020); *Nunez-Vasquez v. Barr*, 965 F.3d 272, 286 (4th Cir. 2020); *Ramirez v. Sessions*, 887 F.3d 693, 698 (4th Cir. 2018); *Zapata v. Mullin*, No. 26-cv-1560 (RJL), 2026 WL 1352420, at *1-2 (D.D.C. May 13,

2026); *Cruz v. Oddo*, No. 3:26-cv-284 (SLH), 2026 WL 1650733, *5 (W.D. Pa. June 8, 2026); *J.O.P. v. Dep't of Homeland Sec.*, 779 F.Supp.3d 570, 583 (D. Md. 2025).

*Irreparable Harm in the Absence of Preliminary Relief.*

122. There is a substantial threat that irreparable harm will result if injunctive relief is not granted.

123. If Mr. Velazquez Contreras is not returned to the United States and afforded all of the process to which he would have been entitled had he not been involuntarily expelled so he can defend himself in removal proceedings and fight to remain in the United States, he will forever be deprived of his statutory right to apply for cancellation of removal and receive a green card for which he is prima facie eligible. The harm would be irreparable.

*Balance of the Equities and the Public Interest.*

124. "The balance of the equities weighs the harm to [plaintiff] if there is no injunction against the harm to [defendants] if there is," and, when the government opposes the preliminary injunction, "the [government]'s harm and the public interest are one and the same, because the government's interest *is* the public interest," so the third and fourth factors merge. *Martinez-Andino*, *supra*, 2026 WL 1801137, *17 (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016)).

125. The balance of equities weighs overwhelmingly in Mr. Velazquez Contreras's favor. If the injunctive relief Mr. Velazquez Contreras seeks is not granted and he is not returned to the United States and afforded all of the process to which he would have been entitled had he not been Involuntarily Expelled, he will be deprived of the opportunity to apply for cancellation of removal leading to lawful permanent residency and a green card for which he is prima facie eligible.

126. Defendants face minimal administrative burden compared to the substantial and irreparable harm to Mr. Velazquez Contreras.

127. Granting injunctive relief will not disserve the public interest. "It is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

128. "Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution (citation omitted). It stands to reason that the public interest also benefits from a preliminary injunction that ensures that federal statutes are construed and implemented in a manner that avoids serious constitutional questions." *Rodriguez v. Robbins*, 715 F.3d 1127, 1146 (9th Cir. 2013). In this instance, the public interest would be undermined if the unlawful actions of ICE/ERO were allowed to stand. *See League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action.").

129. Facilitating Mr. Velazquez Contreras's return to the United States and providing him with all of the process to which he would have been entitled had he not been involuntarily expelled will certainly serve the public interest.

*Bond Requirement.*

130. The Court should not require a bond. Federal courts frequently exercise broad discretion to waive the requirement for a bond when ordering injunctive relief facilitating the return of non-citizens who were illegally removed or involuntarily expelled . *See, e.g., Dcosta v. Warden of the Immigration Detention Facility, et al.*, 820 F.Supp.3d 535, 539 (S.D. Tex. 2026); *D.V.D. v. U.S. Dep't of Homeland Sec.,* 784 F.Supp.3d 401, 406 (D. Mass. 2025)*; Abrego Garcia v. Noem,* Case No. 8:25-cv-00951-PX, 2025 WL 1024654 (D. Md. Apr. 4, 2025).

131. The vindication of Mr. Velazquez Contreras's rights presents no monetary risk of damage to the government. A bond should not be required.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff, Juan Carlos Velazquez Contreras, demands the following relief:

1. For an order, judgment, and writ of mandamus:

   a. Setting aside the Withdrawn Documents and Involuntary Expulsion;

   b. Directing Defendants to facilitate the immediate return of Mr. Velazquez Contreras to the United States at the government's expense, including, but not limited to issuing travel documentation and coordinating with Mexican authorities as necessary, and to file periodic reports until he is safely returned;

   c. Providing Mr. Velazquez Contreras with all of the process to which he would have been entitled had he not been Involuntarily Expelled, including a hearing before an Immigration Judge under 8 U.S.C. § 1229a at which he may present his claim for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(A)-(D);

   d. Prohibiting the use of the Withdrawn Documents against Mr. Velazquez Contreras in any future immigration proceeding or treating the Involuntary Expulsion as triggering or establishing any period of inadmissibility under 8 U.S.C. § 1182(a)(9)(A).

2. For declaratory judgment that:

   a. The Withdrawn Documents were not voluntary, had been withdrawn, and were invalid prior to Mr. Velazquez Contreras's Involuntary Expulsion;

b. Mr. Velazquez Contreras's Involuntary Expulsion was arbitrary, capricious, an abuse of discretion, contrary to law, contrary to agency regulations, and a violation of his constitutional right of due process;

c. The Withdrawn Documents and Involuntary Expulsion must be set aside;

d. Mr. Velazquez Contreras is entitled to relief under the Administrative Procedure Act and the *Accardi* doctrine;

e. Defendants must facilitate the immediate return of Mr. Velazquez Contreras to the United States at the government's expense, including, but not limited to issuing travel documentation and coordinating with Mexican authorities as necessary, and file periodic reports until he is safely returned;

f. Mr. Velazquez Contreras must be provided with all of the process to which he would have been entitled had he not been Involuntary Expulsion to Mexico, including a hearing before an Immigration Judge under 8 U.S.C. § 1229a at which he may present his claim for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(A)-(D);

g. Defendants must be enjoined from using the Withdrawn Documents against Mr. Velazquez Contreras in any future immigration proceeding and from treating the Involuntary Expulsion as triggering or establishing any period of inadmissibility under 8 U.S.C. § 1182(a)(9)(A).

3. For temporary, preliminary, and permanent injunctive relief without bond:

a. Setting aside the Withdrawn Documents and Involuntary Expulsion;

b. Directing Defendants to facilitate Mr. Velazquez Contreras's immediate return to the United States, including, but not limited to issuing travel

documentation and coordinating with Mexican authorities as necessary, and to file periodic reports until he is safely returned;

c. Affording Mr. Velazquez Contreras all of the process to which he would have been entitled had he not been involuntary expelled to Mexico, thus restoring Mr. Velazquez Contreras to the position he occupied prior to the Involuntary Expulsion—specifically, to provide him with a hearing before an Immigration Judge under 8 U.S.C. § 1229a at which he may present his claim for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(A)-(D); and,

d. Enjoining Defendants from using the Withdrawn Documents against Mr. Velazquez Contreras in any future immigration proceeding, and from treating the Involuntary Expulsion as triggering or establishing any period of inadmissibility under 8 U.S.C. § 1182(a)(9)(A).

4. For an award of reasonable attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and as otherwise allowed by law;

5. For costs;

6. For such other and further relief as may be proven at trial and as the Court may deem just, proper, and equitable.

Dated: August 21, 2026

Respectfully submitted,

**HAKE & SCHMITT**

*/s/ Brian Schmitt*
Brian Schmitt
Bar ID: MD0023
2 Locust Lane, Suite 203
Westminster, MD 21157
Phone: 410-635-3337
brian@jvisausa.com

**STOWELL CRAYK PLLC**

*/s/ Adam L. Crayk*
Adam L. Crayk (pro hac vice, pending)
Utah Bar No. 9443
4252 S. 700 E.
Millcreek, Utah 84107
Telephone: (801) 944-3459, Ext. 104
Facsimile: (801) 483-0705
adam@lawscb.com

*Attorneys for Plaintiff Juan Carlos Velazquez Contreras*