**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUAN CARLOS VELAZQUEZ CONTRERAS,<br><br>*Plaintiff*<br><br>v.<br><br>MARY DE ANDA-YBARRA, Field Office Director, El Paso Field Office, U.S. Immigration and Customs Enforcement (ICE);<br>DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; and<br>MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security, all joined in their official capacities,<br><br>*Defendants* | Case No. 1:26-cv-02941-ACR |

# PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## ORAL ARGUMENT REQUESTED

Plaintiff, Juan Carlos Velazquez Contreras ("**Mr. Velazquez Contreras**" or "**Plaintiff**"), respectfully moves the Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure and LCvR 7, for a temporary restraining order and preliminary injunction against Defendants as requested below.

**RELIEF REQUESTED AND THE GROUNDS THEREFOR**

Mr. Velazquez Contreras has initiated this action to challenge his unlawful, arbitrary, and unconstitutional involuntary expulsion from the United States to Mexico executed by U.S. Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO"), El Paso Field Office, on or about May 9–10, 2026. He seeks injunctive relief ordering Defendants to immediately facilitate his return from Mexico to the United States.

Mr. Velazquez Contreras has resided continuously in the United States for approximately twenty-two (22) years. He is the father of a ten-year-old United States citizen son who is diagnosed with autism and who depends on his father for daily care and emotional support. Mr. Velazquez Contreras has no criminal history of any kind.

On or about April 29, 2026, Mr. Velazquez Contreras was arrested by ICE and induced by a threat of prolonged detention in ICE custody to sign four (4) documents, including upon information and belief, Form I-826—a document that would have resulted in a waiver of his right to a hearing before an Immigration Judge and his immediate return to Mexico. When he signed the documents, Mr. Velazquez Contreras did not understand their nature or legal consequence; he did not understand that he was waiving his right to appear before an Immigration Judge; he was not represented by counsel and was denied his request to call his family for their advice; he was not provided with meaningful interpretation or translation; and he

was not advised of his eligibility for cancellation of removal and a green card under 8 U.S.C. § 1229b(b)(1)(A)-(D).

Critically, beginning May 4, 2026, Mr. Velazquez Contreras's immigration attorney in Utah withdrew the documents Mr. Velazquez Contreras had signed when he transmitted to ICE/ERO El Paso, via email and overnight mail, a comprehensive *Emergency Request for Stay of Removal and Withdrawal of Voluntary Return,* accompanied by a filed Form G-28 Notice of Appearance. Counsel transmitted four separate communications to ElPaso.Outreach@ice.dhs.gov between May 4 and May 9, 2026, including explicit notice on the evening of May 9, 2026, that a Temporary Restraining Order and Petition for Writ of Habeas Corpus would be filed if Mr. Velazquez Contreras's removal was not stayed.

Notwithstanding four written communications from counsel of record—ICE/ERO El Paso executed Mr. Velazquez Contreras's involuntary expulsion from the United States to Mexico on the evening of May 9, or the early morning of May 10, 2026 (the "**Involuntary Expulsion**"). He was transported from El Paso, Texas, to Palenque, Chiapas, Mexico.

By the time of his Involuntary Expulsion, Mr. Velazquez Contreras had already withdrawn his signed documents, including any waiver of his right to appear before an immigration judge; **he was *never* put in removal proceedings in Immigration Court under 8 U.S.C. § 1229a; and *an order of removal was never issued.*** Accordingly, his Involuntary Expulsion was unlawful.

## STATEMENT OF RELEVANT FACTS

1. On or about the morning of Wednesday, April 29, 2026, at approximately 6:40 a.m., Mr. Velazquez Contreras arrived at his place of employment in Park City, Utah. He had just parked his vehicle when a government vehicle pulled up and blocked his path. (Declaration

of Juan Carlos Velazquez Contreras ("Pla. Decl."), attached hereto in Spanish with certified English translation as Exhibit A at ¶ 2.)

2. ICE agents approached Mr. Velazquez Contreras and immediately demanded to see his documents. The agents did not state that they had a warrant. They did not identify Mr. Velazquez Contreras by name. They did not advise him of any rights. (*Id.* ¶ 3.)

3. Mr. Velazquez Contreras's father, who was traveling with him to work that day, was simultaneously approached and detained by a separate ICE agent. Both were placed in the agents' vehicle. The entire roadside encounter lasted approximately two minutes. (*Id.* ¶ 4.)

4. During the encounter, the agents appeared confused about Mr. Velazquez Contreras's identity, in part because his father shares the same first name, "Juan." (*Id.* ¶ 5.)

5. At some point during transport, Mr. Velazquez Contreras was handcuffed so tightly that it caused pain to his hands and he was unable to use them. (*Id.* ¶ 6.)

6. When Mr. Velazquez Contreras attempted to call his wife during this time, an agent took his phone and told him he was not permitted to make a call. (*Id.* ¶ 7.)

7. Both men were transported to a staging location in Wyoming where they were handcuffed and placed in a vehicle with approximately ten (10) other individuals and were transported to ERO El Paso Camp East Montana in El Paso, Texas. (*Id.* ¶ 8.)

*Processing, Detention and Coerced Signing*

8. During transport and processing, agents asked whether Mr. Velazquez Contreras understood English. He told them he did not. It was only after his father — who speaks limited English — began speaking with them in Spanish that the agents appeared to realize Mr. Velazquez Contreras and his father spoke Spanish and began addressing Mr. Velazquez Contreras in Spanish as well. (*Id.* ¶ 9.)

9. Upon arrival, Mr. Velazquez Contreras was processed in a group of approximately sixty (60) individuals. He was called for individual processing and presented by an ICE officer with two options:

(a) Request a hearing before an Immigration Judge, with the threat that he would languish in detention for up to eighteen (18) months; or

(b) Sign documents and be released to Mexico within approximately four (4) days.

(*Id.* ¶ 10.)

10. Mr. Velazquez Contreras asked to consult with his family before making a decision. The officer told him he was not allowed to do that; that he was required to decide immediately. (*Id.* ¶ 11.)

11. At no point during processing was Mr. Velazquez Contreras:

(a) Advised of his right to consult with or be represented by counsel;

(b) Advised of his right to a hearing before an Immigration Judge under 8 U.S.C. § 1229a;

(c) Informed of his eligibility for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(A)-(D);

(d) Provided an adequate interpreter or explanation in a language he fully understood; or

(e) Given meaningful time or opportunity to consider the legal consequences of the documents presented to him.

(*Id.* ¶ 12.)

12. Mr. Velazquez Contreras was presented with four (4) documents to sign. The processing officer did not explain the contents of the documents. Rather, she told him that the

documents were simply confirming what had already been explained—that everything was fine. She did not inform him that he was executing a waiver of his right to appear before an Immigration Judge. (*Id.* ¶ 13.)

13. Upon information and belief, one of the documents Mr. Velazquez Contreras signed was ICE Form I-826, which includes provisions waiving the right to appear before an Immigration Judge and consenting to be returned to one's country of origin.

14. In a landmark 2014 class action Settlement Agreement in the U.S. District Court for the Central District of California,[1] ICE agreed to revise its Form I-826 to include language stating: "If you choose to return to your country, you may change your mind and instead request a hearing before a judge in Immigration Court at any time before your departure from the United States. You should let an immigration officer know immediately if you change your mind." Upon information and belief, Mr. Velazquez Contreras signed this revised version of Form I-826.

15. The documents signed by Mr. Velazquez Contreras on or about April 29, 2026, were not knowingly, intelligently, or voluntarily executed. (Pla. Decl. *Id.* ¶ 14.)

*Counsel's Emergency Communications—Actual Notice to the Agency*

16. On May 4, 2026, at approximately 8:00-9:00 p.m. Mountain Daylight Time, Mr. Velazquez Contreras's attorney, Adam L. Crayk of Stowell Crayk in Millcreek, Utah, withdrew the documents Mr. Velazquez Contreras had signed (the withdrawn documents are hereafter referred to as the "**Withdrawn Documents**") by transmitting to ICE/ERO El Paso via email to ElPaso.Outreach@ice.dhs.gov and via overnight delivery, a comprehensive *Emergency Request*

---

[1] Case No. 2:13-cv-03972-JAK-PLA. *See* Settlement Agreement, attached hereto as Exhibit B, at p. 16 of 28, §§ 4.1, 4.2.

*for Stay of Removal and Withdrawal of Voluntary Return*, accompanied by a signed Form G-28 Notice of Entry of Appearance as Attorney. (Declaration of Adam L. Crayk ("Crayk Decl.") attached hereto as Exhibit C, at ¶ 4.)

17. On May 9, 2026, at 5:19 p.m. Mountain Daylight Time, Mr. Crayk transmitted the same *Emergency Request for Stay of Removal and Withdrawal of Voluntary Return*, accompanied by a signed Form G-28, to ICE/ERO El Paso via email ElPaso.Outreach@ice.dhs.gov. (*Id.* ¶ 5.)

18. Also on May 9, 2026, at 5:29 p.m. Mountain Daylight Time, Mr. Crayk sent an email to the El Paso Field Office Director and ERO El Paso Duty Officer at ElPaso.Outreach@ice.dhs.gov which read:

**O: ERO El Paso Field Office Director and Duty Officer**
messages

**dam Crayk** <adam@lawscb.com>
): ElPaso.Outreach@ice.dhs.gov
Sat, May 9, 2026 at 5:29 P

TO: ERO El Paso Field Office Director and Duty Officer EMAIL: ElPaso.Outreach@ice.dhs.gov PHONE: (915) 208-0980 | (915) 637-9270 | (915) 225-1901 Dear Field Office Director and ERO El Paso Duty Officer: This office represents Juan Carlos Velazquez Contreras, A-Number: A222-557-147, currently detained at ERO El Paso Camp East Montana. We have received notice that ICE/ERO intends to remove Mr. Velazquez Contreras THIS EVENING, May 9, 2026. We write to demand an IMMEDIATE STAY OF REMOVAL. IMPORTANT NOTICE: On May 4, 2026, this office transmitted to your office via email and overnight mail a comprehensive Emergency Request for Stay of Removal and Withdrawal of Voluntary Return, signed by Adam L. Crayk, Utah Bar No. 9443, Stowell Crayk PLLC. A copy of that letter and our filed G-28 (Notice of Appearance) are attached to this email. We have received no response. Mr. Velazquez Contreras CANNOT be removed tonight for the following reasons: 1. VOLUNTARY RETURN IS REVOKED AND INVALID. The voluntary return signed on or about April 29, 2026 was not knowingly, intelligently, or voluntarily executed. Mr. Velazquez Contreras was not provided adequate interpretation, was not represented by counsel at signing, and was not informed of his eligibility for relief. The waiver is legally defective under United States v. Ramos, 623 F.3d 672 (9th Cir. 2010) and Matter of Shaughnessy, 12 I&N Dec. 810 (BIA 1968). 2. U.S. CITIZEN CHILD — EXCEPTIONAL HARDSHIP. Mr. Velazquez Contreras is the father of a ten-year-old United States citizen son diagnosed with learning disabilities who depends on his father for daily care and emotional support. Removal would cause exceptional and extremely unusual hardship under INA § 240A(b)(1)(D). See Matter of Andazola-Rivas, 23 I&N Dec. 319 (BIA 2002). 3. 25 YEARS OF CONTINUOUS RESIDENCE. Mr. Velazquez Contreras has resided continuously in the United States for approximately 25 years, far exceeding the 10-year requirement for non-LPR cancellation of removal under INA § 240A(b). 4. DUE PROCESS. Removal without consideration of this emergency request would violate Mr. Velazquez Contreras's Fifth Amendment due process rights and 8 C.F.R. § 241.6. WE DEMAND that ICE/ERO: (1) IMMEDIATELY stay removal pending review of this request; (2) Confirm in writing that no removal will occur tonight; and (3) Contact undersigned counsel immediately by phone or email. Undersigned counsel is available immediately: Adam L. Crayk | adam@lawscb.com | (801) 944-3459 Stowell Crayk, PLLC | 4252 S. 700 E., Millcreek, UT 84107 If we do not receive a response before removal is effectuated, we will seek immediate judicial relief. Respectfully submitted, Adam L. Crayk, Utah Bar No. 9443 Stowell Crayk, PLLC adam@lawscb.com (801) 944-3459 ATTACHMENTS: 1. Emergency Stay Letter dated May 4, 2026 2. Form G-28 — Notice of Appearance (signed 05/04/2026)

(*Id.* ¶ 6.)

19. Also on May 9, 2026, at 6:23 p.m. Mountain Daylight Time, Mr. Crayk sent an email to ElPaso.Outreach@ice.dhs.gov which read: "As Notice, I have provided the TRO and the Habeas which will be filed shortly." (*Id.* ¶ 7.)

20. ICE/ERO El Paso did not respond to any of the communications transmitted between May 4 and May 9, 2026. It did not grant the requested stay. ICE/ERO El Paso did not contact Mr. Crayk by phone or email. (*Id.* ¶ 8.)

*Involuntary Expulsion Executed Despite Actual Notice*

21. On the evening of May 9, 2026, at approximately 8:00–9:00 p.m., Mr. Velazquez Contreras was informed that he and four others were being flown to Mexico that night. He immediately contacted his daughter, who confirmed that Mr. Crayk had withdrawn the documents he had signed. (Pla. Decl. ¶ 15.)

22. Mr. Velazquez Contreras communicated this information to the detention guards. He was brought before an ICE officer at the El Paso facility. He informed her directly that he had an attorney and that his attorney had withdrawn his signed documents. (*Id.* ¶ 16.)

23. The officer showed Mr. Velazquez Contreras the documents and stated he had signed them. When he acknowledged having signed but explained that his attorney had withdrawn the signed documents, the officer told him in effect that he was going to board the aircraft voluntarily—or she would force him to board. (*Id.* ¶ 17.)

24. Mr. Velazquez Contreras was not provided an opportunity to contact his attorney, to appear before an Immigration Judge, or to seek judicial relief before being placed on the aircraft. Mr. Velazquez Contreras was among the last group who boarded onto the aircraft; two ICE agents were present on the plane, and he again told them that his attorney had stopped the

Involuntary Expulsion. One of the agents again told him that he had to board regardless. (*Id.* ¶ 18.)

25. Mr. Velazquez Contreras was flown from El Paso, Texas. The flight stopped near Matamoros, Mexico, before he was transported to Palenque, Chiapas, Mexico, where he arrived on or about May 10, 2026. (*Id.* ¶ 19.)

26. Mr. Velazquez Contreras was *never* placed in removal proceedings, pursuant to 8 U.S.C. § 1229a.

27. There has *never* been an order of removal issued for Mr. Velazquez Contreras.

*Plaintiff's Eligibility for Relief — Failure to Advise*

28. Before his Involuntary Expulsion, Mr. Velazquez Contreras had resided continuously in the United States for approximately twenty-two (22) years, substantially exceeding the ten-year continuous presence requirement of 8 U.S.C. § 1229b(b)(1)(A). (*Id.* ¶ 20.)

29. Mr. Velazquez Contreras has been a person of good moral character throughout his presence in the United States and meets the requirement of 8 U.S.C. § 1229b(b)(1)(B). (*Id.* ¶ 21.)

30. Mr. Velazquez Contreras has no criminal history and meets the requirement of 8 U.S.C. § 1229b(b)(1)(C). (*Id.* ¶ 23.)

31. Mr. Velazquez Contreras is the father of a ten-year-old United States citizen son who is diagnosed with autism. His son depends on him for daily care and emotional support. (*Id.* ¶ 23.) His removal to Mexico constitutes exceptional and extremely unusual hardship to a qualifying United States citizen child within the meaning of 8 U.S.C. § 1229b(b)(1)(D).

32. Mr. Velazquez Contreras presents no adverse factors that would warrant denial of discretionary relief. 8 U.S.C. § 1229b(b)(1)(A)-(D).

33. Had Mr. Velazquez Contreras realized he was waiving his right to appear before an Immigration Judge, or had he been informed of his eligibility for cancellation of removal under 8 U.S.C. § 1229b(b), he would not have signed the Withdrawn Documents. No officer at any stage of the arrest, processing, detention, or removal advised him of this potential relief. (*Id.* ¶ 24.)

## ARGUMENT

### I. STANDARD

"The standard for obtaining either a TRO or a preliminary injunction is identical." *Martinez-Andino v. U.S. Department of Homeland Security*, Case No. 26-1208, 2026 WL 1801137, *7 (D.D.C. June 23, 2026) (slip op.) (quoting *Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at *3 (D.C. Cir. Feb. 15, 2025) (citing *Gordon v. Holder*, 632 F.3d 722, 723-24 (D.C. Cir. 2011)). Thus, to obtain a temporary restraining order the movant must make a clear showing that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) issuing an injunction is in the public interest. *Id.* (citing *Hanson v. Dist. of Columbia*, 120 F.4th 223, 231 (D.C. Cir. 2024) (per curiam) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "The balance of the equities weighs the harm to [plaintiff] if there is no injunction against the harm to [defendants] if there is," and, when the government opposes the preliminary injunction, "the [government]'s harm and the public interest are one and the same, because the government's interest *is* the public interest," so the third and fourth factors merge. *Id.* (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (emphasis in original)); *see also Nken v. Holder*, 556 U.S. 418, 435 (2009).

## II. MR. VELAZQUEZ CONTRERAS IS LIKELY TO SUCCEED ON THE MERITS

Mr. Velazquez Contreras avers in his Complaint that his Involuntary Expulsion was unlawful and that it violated: the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A)-(C); the *Accardi* Doctrine; and Mr. Velazquez Contreras's right to due process under the Fifth Amendment to the United States Constitution. Mr. Velazquez Contreras seeks declaratory relief, a writ of mandamus, and injunctive relief seeking the facilitation of his return to the United States at the government's expense, including, but not limited to issuing travel documentation and coordinating with Mexican authorities as necessary, periodic reports until he is safely returned, and that he be provided with all of the process to which he would have been entitled had he not been illegally removed to Mexico, including a hearing before an Immigration Judge under 8 U.S.C. § 1229a at which he may present his claim for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(A)-(D). He also seeks to enjoin Defendants from using the Withdrawn Documents against him in any future immigration proceeding and from treating the Involuntary Expulsion as triggering or establishing any period of inadmissibility under 8 U.S.C. § 1182(a)(9)(A)

The coercive tactics ICE has used to induce noncitizens to sign Form I-826 have been known for years. In a landmark case, the ACLU sued the Department of Homeland Security in a class action, demonstrating that Border Patrol and ICE officers were routinely using pressure, deception, and coercion to force noncitizens into signing Form I-826 without disclosing certain consequences of accepting voluntary departure and failing to provide noncitizens with access to counsel. The federal court approved a class settlement that established strict protections. It required, *inter alia*, immigration authorities to allow individuals to: rescind their voluntary consent *at any time before their departure* from the United States and to revise Form I-826 to

specifically so state, provide a toll-free advisal hotline, allow at least two hours to contact an attorney or family member, provide a working phone line to speak with legal counsel, including multiple calls and multiple attempts to attorneys who have emailed Form G-28, and even allowed individuals to return to the U.S. to pursue their immigration cases in federal court. Immigration authorities were forbidden from attempting to influence an individual's choice to elect or decline Withdrawn Documents, including offering legal advice about the length of detention that might result if the individual requested a hearing before an immigration judge. *See Lopez-Venegas v. Johnson*, Case No. 2:13-cv-03972, 2014 WL 12772087 (C.D. Cal. Aug. 28, 2014), 2015 WL 13916876 (C.D. Cal. Feb. 25, 2015) (*See also* Settlement Agreement, attached hereto as Exhibit B, at p. 16 of 28, §§ 4.1(d), 4.2).

Although Mr. Velazquez Contreras is not a member of the *Lopez-Venegas* class, his circumstances are remarkably similar. He was coerced into signing documents, including, upon information and belief, Form I-826, with threats of prolonged detention and the urgency to sign the documents immediately. When he signed the documents, Mr. Velazquez Contreras did not understand their nature or legal consequence; he did not understand that he was waiving his right to appear before an Immigration Judge; he was not represented by counsel and was denied his request to call his family first for their advice; he was not provided with meaningful interpretation or translation; and he was not advised of his eligibility for cancellation of removal and a green card under 8 U.S.C. § 1229b(b)(1)(A)-(D).

Courts have consistently held that a waiver of the right to a hearing is invalid where the individual lacked a full understanding of the rights being waived. *See, e.g., United States v. Ramos*, 623 F.3d 672 (9th Cir. 2010); *Matter of Shaughnessy*, 12 I&N Dec. 810 (BIA 1968). But most importantly, Mr. Velazquez Contreras withdrew his Withdrawn Documents before his

Involuntary Expulsion. Once ICE/ERO was put on notice, Mr. Velazquez Contreras's signed documents, including any waiver of his right to request a hearing before the Immigration Court, were withdrawn and no longer valid. The Department of Homeland Security was then stripped of its authority to administratively remove Mr. Velazquez Contreras and was required to issue, serve, and file Form I-862 *Notice to Appear*, initiating removal proceedings in Immigration Court. *See* 8 U.S.C. § 1229.

*There was no order of removal for Mr. Velazquez Contreras.*

Because Mr. Velazquez Contreras was not a candidate for expedited removal and had committed no crimes warranting removal, the only lawful means to remove Mr. Velazquez Contreras absent his voluntary consent was a final order of removal issued by an Immigration Judge. *See* 8 U.S.C. § 1231(a)(1)(A).

As the Fourth Circuit Court of Appeals put it: *"The United States Government has no legal authority to snatch a person who is lawfully present in the United States off the street and remove him from the country without due process*." *Abrego Garcia v. Noem*, No. 25-1345, 2025 WL 1021113, at *1 (4th Cir. Apr. 7, 2025) (italic added), aff'd, 604 U.S.--, 145 S.Ct. 1017, 225 L.Ed.2d 655 (2025).

The district court in *Abrego Garcia* explained the critical importance of an order of removal:

> "An order of removal is the vehicle by which the Executive branch retains the power conferred by Congress under the INA to remove a noncitizen from the United States against his will. *See* 8 U.S.C. § 1231(a)(1)(A). Such power is tantamount to an order of deportation, defined as "an *order* 'concluding that the [noncitizen] is deportable or ordering deportation.'" "[T]he existence of a removal order is fundamental to determine whether, and to where, a noncitizen may be removed."

*Abrego Garcia v. Noem*, 811 F.Supp.3d 741, 756-57 (D. Md. 2025) (quoting *Riley v. Bondi*, 606 U.S. 259, 267, 145 S. Ct. 2190, 222 L.Ed.2d 497 (2025)).

*Due Process Claims.*

Like *Abrego Garcia*, Mr. Velazquez Contreras, too, was entitled to the rights of due process that Congress has provided by statute. *DHS v. Thuraissigiam*, 591 U.S. 103, 140, 140 S. Ct. 1959, 107 L.Ed.2d 427 (2020). These rights required a final order of removal that protected him from being "snatched." *See* 8 U.S.C. § 1229a (governing removal); *see also* 8 C.F.R. § 1241.1 (governing administrative checkpoints that make the order administratively final); 8 U.S.C. § 1231 (governing physical detention, release, and removal of noncitizen ordered removed).

Mr. Velazquez Contreras withdrew his signed documents. He was never issued a Notice to Appear and placed in removal proceedings where he could fight to stay in the United States and apply for cancellation of removal, for which he was prima facie eligible. *See* 8 U.S.C. § 1229b(b)(1)-(4). An order of removal was never issued. His Involuntary Expulsion was, therefore, a violation of his right to due process.

*APA Claims.*

This district court is required to hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or contrary to constitutional right, power, privilege, or immunity, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. 5 U.S.C. § 706(2)(A)-(C).

Mr. Velazquez Contreras was never placed in proceedings in Immigration Court and an order of removal was never entered. In short, there was no compliance with the procedures in the Immigration and Nationality Act, including 8 U.S.C. §§ 1229a and 1231, and 8 C.F.R. §

1241.1. And as soon as ICE/ERO was notified—not once, **but four times,** all before Mr. Velazquez Contreras's Involuntary Expulsion—that he had withdrawn his signed documents, ICE/ERO had no authority whatsoever to involuntarily expel Mr. Velazquez Contreras to Mexico. To say that his Involuntary Expulsion was arbitrary, capricious, an abuse of discretion, not in accordance with law, contrary to his constitutional right of due process, and in excess of statutory jurisdiction, authority, or short of statutory right, would be an understatement at best.

Now, the issue is what to do about it.

*Return to the United States is the Appropriate Remedy.*

"When a noncitizen has been removed from this country without any legal process, a district court may properly require the Government to facilitate the person's return to the United States, and to ensure that his case is handled as it would have been had he not been improperly sent to [another country]." *Martinez-Andino v. U.S. Department of Homeland Security*, *supra*, 2026 WL 1801137, *17 (cleaned up) (quoting *Abrego Garcia v. Noem*, No. 8:25-cv-951 (PX), 2025 WL 1024654, at *1 (D. Md. Apr. 4, 2025), and *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025)). "Indeed, '[c]ourts, including district courts, regularly find that return is the appropriate remedy when a removal is found to be unlawful.'" *Id.* (citing *D.V.D. v. Dep't of Homeland Sec.*, 784 F. Supp. 3d 401, 406 (D. Mass. 2025) (collecting cases); *Gordon v. Barr*, 965 F.3d 252, 261 (4th Cir. 2020) (directing government to facilitate return to the United States prior to the Supreme Court's affirmance of such an order in *Abrego-Garcia*); *Nunez-Vasquez v. Barr*, 965 F.3d 272, 286 (4th Cir. 2020) (same); *Ramirez v. Sessions*, 887 F.3d 693, 698 (4th Cir. 2018) (directing the Government "to facilitate [plaintiff's] return to the United States" from El Salvador "to effectuate judicial review" of his removal and "to restore him to the status he had before his removal, such that he may apply for relief under [a statute that could prevent his

deportation] under the correct standard"); *Orabi v. Att'y Gen.*, 738 F.3d 535, 543 (3d Cir. 2014) ("direct[ing] [that the government] ... return Orabi to the United States" when he had been deported based on criminal convictions that "were not final for immigration removal" yet); *Zapata v. Mullin*, No. 26-cv-1560 (RJL), 2026 WL 1352420, at *1-2 (D.D.C. May 13, 2026) (ordering that "defendants shall take all available steps to facilitate the return of plaintiff to the United States as soon as possible" after concluding that "the Government is [not] likely to succeed on any of its jurisdictional arguments); *Cruz v. Oddo*, No. 3:26-cv-284 (SLH), 2026 WL 1650733, *5 (W.D. Pa. June 8, 2026)). *See also Dcosta v. Warden of the Immigration Detention Facility, et al.*, 820 F.Supp.3d 535, 539 (S.D. Tex. 2026) (same); *J.G.G. v. Trump*, 813 F.Supp.3d 126, 155 (D.D.C. Dec. 22, 2025) (requiring the Government "to articulate what steps it proposes to facilitate the return of Plaintiffs" after they were unlawfully removed).

Mr. Velazquez Contreras is likely entitled to have his return to the United States facilitated at government expense, including, but not limited to issuing travel documentation and coordinating Mexican authorities as necessary, with periodic reports until he is safely returned, and to be provided with all of the process to which he would have been entitled had he not been illegally removed to Mexico. *See Noem v. Abrego Garcia*, 145 S. Ct. at 1019 (Sotomayor, J., concurring) ("I agree with the Court's order that the proper remedy is to provide Abrego Garcia with all the process to which he would have been entitled had he not been unlawfully removed."). This necessarily includes placing Mr. Velazquez Contreras in removal proceedings in the Immigration Court with the statutory right to apply for cancellation of removal. Defendants should also be enjoined from using the Withdrawn Documents against Mr. Velazquez Contreras in any future immigration proceeding and from treating the Involuntary

Expulsion as triggering or establishing any period of inadmissibility under 8 U.S.C. § 1182(a)(9)(A).

Given the facts of Mr. Velazquez Contreras's case and applicable law, Mr. Velazquez Contreras is likely to succeed on the merits of his claims.

## III. MR. VELAZQUEZ CONTRERAS IS LIKELY TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF.

If Mr. Velazquez Contreras is not returned to the United States so he can defend himself in removal proceedings and fight to remain in the United States, he will forever be deprived of his right to apply for cancellation of removal and a green card under 8 U.S.C. § 1229b(b)(1)(A)-(D) for which he is prima facie eligible. Furthermore, he has a ten-year-old U.S. citizen son with autism who heavily relies on his father for support. The harm would be irreparable.

## IV. THE THREATENED INJURY TO MR. VELAZQUEZ CONTRERAS OUTWEIGHS ANY HARM TO THE DEFENDANTS.

Again, when the government opposes the preliminary injunction, "the [government]'s harm and the public interest are one and the same, because the government's interest *is* the public interest." *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (emphasis in original).

Defendants would face minimal administrative burden compared to the irreparable harm to Mr. Velazquez Contreras if his return to the United States is not facilitated. Furthermore, "It is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). "Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution (citation omitted). It stands to reason that the public interest also benefits from a preliminary injunction that ensures that federal statutes are construed and

implemented in a manner that avoids serious constitutional questions." *Rodriguez v. Robbins*, 715 F.3d 1127, 1146 (9th Cir. 2013). In this instance, the public interest would be undermined if the unlawful actions of ICE/ERO were allowed to stand. *See Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997) (holding that the public interest would be undermined if the illegal actions of the school board were allowed to stand.)

Facilitating Mr. Velazquez Contreras's return to the United States and providing him with all of the process to which he would have been entitled had he not been involuntarily expelled will certainly serve the public interest.

## V. THE COURT SHOULD NOT REQUIRE A BOND

Federal courts frequently exercise broad discretion to waive the requirement for a bond when ordering injunctive relief facilitating the return of noncitizens who were illegally removed or expelled. *See, e.g., Dcosta, supra,* 2026 WL 74187; *D.V.D., supra,* 784 F.Supp.3d at 406; *Abrego Garcia v. Noem,* Case No. 8:25-cv-00951-PX, 2025 WL 1024654 (D. Md. Apr. 4, 2025).

The vindication of Mr. Velazquez Contreras' statutory and constitutional rights presents no monetary risk of damage to the government. A bond should not be required.

## CONCLUSION

For the reasons set forth, Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction should be granted.

Dated this 18th day of September, 2026.

Respectfully submitted,

**HAKE & SCHMITT**

*/s/ Brian Schmitt*
Brian Schmitt

Maryland Bar No. 30151
2 Locust Lane, Suite 203
Westminster, MD 21157
Phone: 410-635-3337
https://jvisausa.com/

**STOWELL CRAYK PLLC**

*/s/ Adam L. Crayk*
Adam L. Crayk (pro hac vice)
Utah Bar No. 9443
4252 S. 700 E.
Millcreek, Utah 84107
Phone: (801) 944-3459, Ext. 104
Facsimile: (801) 483-0705
adam@lawscb.com

**FABIAN VANCOTT**

*/s/ P. Bruce Badger*
P. Bruce Badger (pro hac vice)
Utah Bar No. 4791
95 S. State St., Suite 2300
Salt Lake City, Utah 84111
Phone: (801) 531-8900, (801) 596-2814
bbadger@fabianvancott.com

*Attorneys for Plaintiff Juan Carlos Velazquez Contreras*