UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUAN CARLOS VELAZQUEZ,

Plaintiff,

v.

MARY DE ANDA-YBARRA, Field office Director, El Paso Office, U.S. Immigration and Customs Enforcement, et al.,

Defendant.

Civil Action No. 26-2941 (ACR)

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS


Table of Contents ........ i

Introduction ........ 1

Background ........ 3

I. Plaintiff's Allegations and Requested Relief ........ 3

II. Plaintiff's Delay in Seeking Emergency Relief ........ 4

Legal Standards ........ 5

Argument ........ 7

I. The Court Should Deny the Motion on Plaintiff's Failure to Establish Irreparable Harm. ........ 7

A. Plaintiff Can Continue to Pursue his Legal Claims from Mexico. ........ 8

B. Plaintiff's Four-Month Delay Undercuts Any Claim of Irreparable Harm. 9

C. Plaintiff Fails to Adequately Describe Irreparable Harm Related to His Family. ........ 11

D. The Remaining Asserted Harms are not Certain, Great, Imminent, and Beyond Remediation. ........ 12

II. Plaintiff Has Not Made a Clear Showing of Likelihood of Success of the Merits. ........ 15

A. Plaintiff Cannot Seek Ultimate Relief in a Preliminary Posture. ........ 15

B. Plaintiff's Claims Fails to Justify an Order Compelling His Return. ........ 16

C. Plaintiff's APA and Mandamus Theories Do Not Establish a Clear Right to the Relief Sought. ........ 19

D. The Alleged Past Due-Process Violation Does Not Establish Entitlement to Preliminary Relief. ........ 20

III. The Balance of Equities and Public Interest Favor Defendants. ........ 20

IV. The Court Should Order Bond. ........ 22

Conclusion ........ 22

**TABLE OF AUTHORITIES**

*Abdullah v. Obama*, 753 F.3d 193 (D.C. Cir. 2014)……………………………..…..................7

*Archdiocese of Wash. v. Wash. Metro. Area Transit Auth*., 897 F.3d 314 (D.C. Cir. 2018)…........14

*Biovail Corp. v. FDA*, 448 F. Supp. 2d 154 (D.D.C. 2006)…………………………………………10

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006)……...............7, 8

*CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738 (D.C. Cir. 1995)…………2, 6, 14

*Damus v. Nielsen*, Civ. A. No. 18-0578 (JEB), 2018 WL 3232515 (D.D.C. July 2, 2018)……………………………………………………….……………………..3, 5, 8, 19

*Davis v. Pension Benefit Guaranty Corp*., 571 F.3d 1288 (D.C. Cir. 2009)……………………5, 6

*Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669 (D.C. Cir. Feb. 15, 2025)………………….5

*Farris v. Rice*, 453 F. Supp. 2d 76 (D.D.C. 2006)…………………………………………...7, 16

*Fisheries Survival Fund v. Jewell*, 236 F. Supp. 3d 332 (D.D.C. 2017)……………………………7

*Fund for Animals v. Frizzell*, 530 F.2d 982 (D.C. Cir. 1975)…………………………….........10

*Gordon v. Holder*, 632 F.3d 722 (D.C. Cir. 2011)…………………………………………………5

*Hanson v. District of Columbia,* 120 F.4th 223 (D.C. Cir. 2024)……………………..……9, 13

*I.G.I. v. Noem*, No. 25-cv-3898 (DLF) (D.D.C. Dec. 9, 2025) (oral ruling).................1-2, 8-11, 14

*League of Women Voters of U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016)…………………………7

*Martinez*-Andino v. U.S. Department of Homeland Security, Case No. 26-1208, 2026 WL 1801137 (D.D.C. June 23, 2026)……………………………………………………………..5

*Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30 (D.D.C. 2000)………………………………10

*Nken v. Holder,* 556 U.S. 418 (2009)……………………………………………5, 6, 8, 20-21

*Open Top Sightseeing USA v. Mr. Sightseeing, LLC,* 48 F. Supp. 3d 87 (D.D.C. 2014)………..…9

*Pantoja v. Martinez*, No. 21-7118, 2022 WL 893017 (D.C. Cir. 2022) (per curiam)…………7, 16

*Sherley v. Sebelius,* 644 F.3d 388 (D.C. Cir. 2011)……………………………………….5, 15

*Starbucks Corp. v. McKinney*, 602 U.S. 339 (2024)…………………………………………..…13

*United States Ass'n of Reptile Keepers, Inc. v. Zinke*, 852 F.3d 1131 (D.C. Cir. 2017)…………..6

*Wilt v. Rubio*, No. 26-cv-2303 (BAH), Tr. of TRO Hr'g (D.D.C. June 30, 2026)…..3, 9-10, 12, 14

*Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7 (2008)……………..5-7, 13, 15, 16

Defendants, government agencies and officials responsible for administering the Nation's immigration laws and programs, hereby submit this opposition to Plaintiff Juan Carlos Velazquez's motion for temporary retaining order and preliminary injunction.

## INTRODUCTION

Plaintiff requests extraordinary relief requiring the Government to facilitate his return from Mexico to the United States before the Court adjudicates the claims in his Complaint. The motion should be denied because Plaintiff has not established the required elements warranting emergency relief: likelihood of success on the merits, irreparable harm, and balance of the equities.

Plaintiff fails to demonstrate irreparable harm because he does not show that his present location in Mexico, from where he filed his Complaint, prevents him from litigating this case, obtaining judicial review of the legality of his removal, or pursuing the legal theories pleaded in his Complaint. Nothing in the motion establishes that Plaintiff must be physically present in the United States for this Court to decide whether the challenged agency action was lawful or to award any relief that may ultimately be legally available.

The timing of the motion both independently cuts against emergency relief and confirms that this matter is not suitable for emergency relief. Plaintiff alleges that he was sent to Mexico on May 9 or 10, 2026, and his counsel knew before that departure of the very legal objections now asserted. Compl. ¶¶ 23–27, 35–40. Yet Plaintiff did not file this action until August 21, 2026, and did not file the present emergency motion until September 17, 2026—more than four months after the challenged departure. Pl.'s Mot. at 1–3. As Judge Friedrich explained in a nearly identical case when denying materially similar return-to-the-United-States preliminary relief, a lengthy delay, while not dispositive, "cuts against a finding of irreparable harm." *I.G.I. v. Noem*, No. 25-cv-3898 (DLF), Tr. of Oral Ruling 5:21–6:12 (D.D.C. Dec. 9, 2025).

Plaintiff's family-based allegations likewise do not satisfy the demanding D.C. Circuit standard for irreparable harm. The motion states that Plaintiff's ten-year-old son heavily relies on Plaintiff for support, Pl.'s Mot. at 17, but it does not establish that no spouse, grandparent, adult sibling, relative, guardian, or other caregiver in the United States is available to care for the child while this litigation proceeds. This evidentiary gap is meaningful because irreparable harm must be certain, great, actual, imminent, and beyond remediation—not assumed from generalized hardship. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Judge Friedrich's *I.G.I.* ruling is instructive: the court rejected generalized family and country-condition harms where despite changed caregiving circumstances, there was an individual able to provide a stable home for the plaintiff's minor child. I.G.I. Tr. 5:5–20. Because irreparable harm is independently indispensable, the Court should deny the motion without reaching the remaining factors. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).

The remaining factors also require denial. Plaintiff seeks a mandatory injunction that would alter the existing circumstances by compelling affirmative Government action and facilitating his entry into the United States. At this preliminary stage, Plaintiff has not made the clear showing necessary to establish a legal entitlement to that remedy, and the balance of equities and public interest do not support ordering that extraordinary relief before the merits and threshold legal questions are resolved. A recent ruling on a motion for temporary restraining order ("TRO") in this District reinforces those conclusions. In *Wilt v. Rubio*, No. 26-cv-2303 (BAH), the plaintiffs sought emergency relief directed at visa processing so that a foreign-national spouse could come to the United States and join his U.S.-based wife. The plaintiffs argued that each day of separation compounded medical, family, and emotional harm that could not later be repaired. Tr. of TRO Hr'g 3:7–25, 23:18–24:17 (D.D.C. June 30, 2026) ("Wilt Tr."). Judge Howell denied the TRO,

emphasizing that the asserted medical and caregiving harms were longstanding rather than newly emergent, that the foreign spouse had not previously been present in the United States to provide the claimed care, that the plaintiffs had delayed months before seeking emergency relief, and that the requested visa-processing relief would not necessarily produce the immediate family, medical, or financial assistance claimed as irreparable harm. *Id.* at 24:19–29:10. Those considerations closely parallel the defects in Plaintiff's showing here and further demonstrate why extraordinary emergency relief is unwarranted.

## BACKGROUND

### I. Plaintiff's Allegations and Requested Relief

Plaintiff alleges that he is a Mexican citizen who lived in the United States for approximately twenty-two years before ICE encountered him in Utah on April 29, 2026. Compl. ¶¶ 1, 8–14. According to the Complaint and motion, Plaintiff signed several documents during processing, including Form I-826, but contends that he did not understand the documents and that his execution of them was not knowing or voluntary. Compl. ¶¶ 15–23; Pl.'s Mot. at 2–6.

Plaintiff further alleges that, beginning May 4, 2026, his immigration counsel sent ICE an emergency request purporting to withdraw the signed documents and voluntary-return election. Compl. ¶¶ 24–29; Pl.'s Mot. at 6–8. Plaintiff alleges that he was nevertheless transported to Mexico on May 9 or 10, 2026, without having been placed in removal proceedings under 8 U.S.C. § 1229a and without an order of removal. Compl. ¶¶ 30–40; Pl.'s Mot. at 8–9.

The Complaint asserts claims under the Administrative Procedure Act, the Fifth Amendment, the *Accardi* doctrine, the Declaratory Judgment Act, the Mandamus Act, and separately requests injunctive relief. Compl. *See* Compl. Counts I–IX. Among other relief, Plaintiff asks the Court to set aside the challenged documents and departure, direct Defendants to facilitate his immediate return at Government expense, require proceedings before an Immigration

Judge, and prohibit Defendants from relying on the disputed documents or treating his departure as triggering inadmissibility. *See id.* Prayer for Relief ¶¶ 1–3. The present motion principally seeks an order compelling Defendants to facilitate Plaintiff's immediate return. Pl.'s Mot. at 2, 15–18.

## II. Plaintiff's Delay in Seeking Emergency Relief

Plaintiff alleges that his counsel was actively communicating with ICE before his departure and expressly stated on May 9, 2026, that he would pursue a TRO and habeas petition. Compl. ¶¶ 24–29; Pl.'s Mot. at 6–8. Plaintiff alleges that he arrived in Mexico by May 10. Pl.'s Mot. at 9. But the Complaint was not filed until August 21, 2026, and the emergency motion was filed September 17, 2026. Thus, despite advance knowledge of the asserted legal injury and an expressed intent to seek emergency judicial intervention, Plaintiff waited more than four months after the alleged expulsion to request a temporary restraining order requiring return.

The Complaint itself makes the timing problem particularly stark. Plaintiff alleges that counsel began attempting to withdraw the signed documents on May 4, 2026, sent repeated communications to ICE on May 9, and at 6:23 p.m. that evening expressly advised ICE that "the TRO and the Habeas . . . will be filed shortly." Compl. ¶¶ 24–27. Plaintiff further alleges that, before boarding the aircraft, he personally told ICE officers that his attorney had withdrawn the documents and stopped his departure. *Id*. ¶¶ 29–32. Thus, on Plaintiff's own allegations, both Plaintiff and counsel understood the asserted injury and the asserted need for judicial intervention before Plaintiff left the United States. Yet no TRO or habeas petition was filed at that time. Instead, Plaintiff waited until August 21, 2026, to file this action and until September 17, 2026, to seek the emergency relief now requested. That chronology is difficult to reconcile with a claim of a clear and present emergency requiring immediate mandatory relief.

## LEGAL STANDARDS

"The standard for obtaining either a TRO or a preliminary injunction is identical." *Martinez-Andino v. U.S. Department of Homeland Security*, Case No. 26-1208, 2026 WL 1801137, at *7 (D.D.C. June 23, 2026) (quoting *Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at *3 (D.C. Cir. Feb. 15, 2025) (citing *Gordon v. Holder*, 632 F.3d 722, 723–24 (D.C. Cir. 2011))).

A temporary restraining order is a form of "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC*, 555 U.S. 7, 22 (2008). To obtain such emergency relief, the movant must show that (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Id*. at 20. The latter two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Before *Winter*, courts weighed these factors on the movant-friendly "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another. *Damus v. Nielsen*, 313 F. Supp. 3d 317, 326 (D.D.C. 2018) (quoting *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009)). Following *Winter*, courts have recognized that the sliding scale approach is no longer viable and that each of the factors is now an "independent, free-standing requirement." *Sherley v. Sebelius*, 644 F.3d 388, 392-93 (D.C. Cir. 2011); *see also Singh v. Carter*, 185 F. Supp. 3d 11, 16-17 (D.D.C. 2016) (sliding scale approach is "highly questionable," and a plaintiff "bears the burden of persuasion on all four preliminary injunction factors"). Therefore, the Court may not use the "sliding scale" analysis to grant Plaintiffs' emergency relief request because "[t]he default rule is that a plaintiff seeking a preliminary injunction must make a clear showing" as to each *Winter* element. *Starbucks Corp. v.*

*McKinney*, 602 U.S. 339, 346 (2024). The D.C. Circuit has not had occasion to conclusively decide whether that sliding scale survives *Winter* and *Nken* but has denied preliminary relief where the movant could not satisfy even the sliding scale approach. *See Make the Road N.Y. v. Mullin*, 179 F.4th. 16, 25 (D.C. Cir. 2026) ("Nor do we need to decide so today because Make the Road has not satisfied the more movant-friendly, sliding-scale standard."); *see also Davis v. Penson Ben. Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009) (We need not decide whether a stricter standard applies, because the pilots fail even under the "sliding scale" analysis of *Davenport*."). Thus, the Court could deny Plaintiffs' motion if it finds that they do not satisfy the "sliding scale" approach.

If the Court concludes that a claim fails as a matter of law, on a point of jurisdiction or merits, then a preliminary injunction is inappropriate. *See United States Ass'n of Reptile Keepers, Inc. v. Zinke*, 852 F.3d 1131, 1135 (D.C. Cir. 2017). "So in evaluating the likelihood-of-success question for the purpose of ruling on a request for interim relief, courts may consider both the likelihood that they have jurisdiction and the likelihood that the claim will succeed on the merits," and, "[i]f they conclude that a claim fails on either ground, they must deny interim relief." *Mullin v. Doe*, 146 S. Ct. 2121, 2137 (2026) (plurality decision). Indeed, if the Court "concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Moreover, because preliminary injunctions are not "awarded as of right," but "[a]s a matter of equitable discretion, a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits." *Benisek v. Lamone*, 585 U.S. 155, 158 (2018). A showing of a strong likelihood of success on the merits can still lead to the denial of preliminary injunctive relief if the party fails to make a sufficient showing of irreparable injury. *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995); *see also*

*Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733 (D.C. Cir. 2022) ("Because the Plaintiffs are likely to succeed on the merits of their § 1231 claims, we apply the other preliminary injunction factors to decide whether the Plaintiffs are entitled to relief on those claims").

And where, as here, a party "seeks a mandatory injunction—to change the status quo through action rather than merely to preserve the status quo—typically the moving party must meet a higher standard than in the ordinary case: the movant must show 'clearly' that [he] is entitled to relief or that extreme or very serious damage will result." *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006); *Pantoja v. Martinez*, No. 21-7118, 2022 WL 893017, at *1 (D.C. Cir. 2022) (per curiam) (characterizing an injunction that would reinstate the plaintiff in prior leadership roles as a "mandatory preliminary injunction ... requir[ing] a higher standard than an ordinary preliminary injunction"); but *see League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016) (rejecting distinction between a mandatory and prohibitory injunction).

## ARGUMENT

### I. The Court Should Deny the Motion on Plaintiff's Failure to Establish Irreparable Harm.

Plaintiff must show that he is "likely to suffer irreparable harm in the absence of preliminary relief." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014); *see also Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam). A preliminary injunction may not issue "based only on a possibility of irreparable harm" because injunctive relief is an extraordinary remedy available only upon a clear showing. *Winter*, 555 U.S. at 22. The "standard for irreparable harm is particularly high in the D.C. Circuit." *Fisheries Survival Fund v. Jewell*, 236 F. Supp. 3d 332, 336 (D.D.C. 2017). The injury "must be both certain and great; it must be actual and not theoretical," and sufficiently imminent "to create a clear and present need for equitable relief." *Chaplaincy*, 454 F.3d at 297. Plaintiff here has not met that demanding standard.

**A. Plaintiff Can Continue to Pursue his Legal Claims from Mexico.**

Plaintiff's principal irreparable-harm theory is that, unless he is immediately returned, he will be "forever" deprived of the opportunity to defend himself in removal proceedings and apply for cancellation of removal. Pl.'s Mot. at 17. But Plaintiff fails to establish how and why his physical presence in the United States is necessary for this Court to adjudicate his claims. Plaintiff is already pursuing those claims from Mexico through counsel. He filed a detailed Complaint challenging the legality of his departure, despite being in Mexico already, asserting APA, constitutional, *Accardi*, mandamus, declaratory, and injunctive theories. Compl. Counts I–IX. He has now filed a motion seeking return. The present litigation itself therefore demonstrates that his present location does not prevent him from seeking judicial review. *Cf. Nken*, 556 U.S. at 435 ("Aliens who are removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal.").

Nor does Plaintiff show that a denial of immediate return would make any eventual merits relief impossible. If Plaintiff ultimately establishes a legally cognizable right to relief, the Court can address the appropriate remedy at that time, subject to the limits of its jurisdiction and remedial authority. The relevant question at this stage is not whether Plaintiff prefers to litigate from inside the United States, but whether remaining in Mexico while the Court adjudicates his claims causes an injury that is "beyond remediation." *Chaplaincy*, 454 F.3d at 297. Plaintiff has not made that showing.

Judge Friedrich's oral ruling in *I.G.I.* is instructive. There, the plaintiff sought an order compelling the Government to facilitate his return from Guatemala. The court found that the plaintiff's inability to pursue one immigration benefit while abroad did not establish irreparable harm when he had not shown why he would be precluded from pursuing immigration pathways in

the future. *I.G.I.* Tr. 5:17–20. The same reasoning applies with even greater force to Plaintiff's litigation-based theory here: he is presently pursuing his legal claims, and he does not establish that remaining abroad during adjudication extinguishes them.

*Wilt* provides an additional and closely related illustration. There, the asserted objective of the TRO was to permit completion of visa processing so that the foreign-national spouse could join his wife in the United States. *Wilt* Tr. 3:7–25. The plaintiff asserted that his physical absence compounded medical, family, emotional, caregiving, and financial harms. *Id*. at 23:18–24:17. The court nevertheless denied emergency relief, explaining that the plaintiff's wife had long managed her medical conditions and cared for her child without her spouse physically present in the United States, and that the requested relief would not necessarily result in a visa or the spouse's presence in the United States. *Id*. at 25:5–26:24, 28:1–29:10. The same principle applies here: Plaintiff must establish why his physical presence in the United States is necessary now, before adjudication of the merits. He fails to do so, and the Court need seek to fashion a theory for him. *See United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020) ("courts [remain] essentially passive instruments of government"; "do not . . . sally forth each day looking for wrongs to right"; and instead "wait for cases to come to them" and "decide only questions presented by the parties." (citation modified)). His ability to file and litigate this action from Mexico substantially undermines his attempt to establish irreparable harm.

**B. Plaintiff's Four-Month Delay Undercuts Any Claim of Irreparable Harm.**

Plaintiff's delay independently undermines the required showing of imminence. A party requesting preliminary relief must act with reasonable diligence. *Hanson v. District of Columbia*, 120 F.4th 223, 246 (D.C. Cir. 2024). Courts in this Circuit have repeatedly treated unexplained delay as evidence that the asserted harm is not sufficiently imminent to justify emergency relief. *See Open Top Sightseeing USA v. Mr. Sightseeing*, LLC, 48 F. Supp. 3d 87, 90 (D.D.C. 2014);

*Mylan Pharmaceuticals, Inc. v. Shalala*, 81 F. Supp. 2d 30, 44 (D.D.C. 2000); *Biovail Corp. v. FDA*, 448 F. Supp. 2d 154, 165 (D.D.C. 2006).

The delay here is especially significant because Plaintiff's own allegations show that his counsel knew of the asserted injury before it occurred. Counsel claims to have sent multiple communications between May 4 and May 9 objecting to Plaintiff's departure and, on May 9, expressly advised ICE that a TRO and habeas petition "will be filed shortly." Pl.'s Mot. at 6–8; Compl. ¶¶ 24–29. Yet no TRO was filed before Plaintiff departed, no action was filed until August 21, and no emergency motion was filed until September 17. Plaintiff offers no explanation in the motion for why an injury known in early May became an emergency requiring immediate judicial action only in mid-September.

*I.G.I.* again provides a close analogue. Judge Friedrich recognized that some delay is understandable when a plaintiff has been moved to another country, but held that a six-month delay "though not dispositive, cuts against a finding of irreparable harm." *I.G.I.* Tr. 5:21–6:12. The court relied on D.C. Circuit precedent treating even a forty-four-day delay as bolstering denial of an injunction where the movant knew of the asserted harm. *Id.* at 5:21–6:7 (citing *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975)). Plaintiff's more-than-four-month delay likewise weighs heavily against the proposition that there is now a clear and present need for extraordinary relief.

*Wilt* likewise treated delay as evidence against emergency relief. Although the plaintiffs there characterized ongoing family separation and medical hardship as irreparable, Judge Howell, also citing *Fund for Animals v. Frizzell,* concluded that waiting almost five months after the visa refusal to seek a TRO supported the determination that the alleged injuries did not suddenly require emergency relief. *Wilt* Tr. 27:3–23 (citing 530 F.2d 982 (D.C. Cir. 1975)). Here, Plaintiff's delay

counsels against a finding of irreparable harm because his counsel allegedly contemplated a TRO before Plaintiff even departed, expressly stating on May 9 that a TRO and habeas petition would be filed "shortly." Compl. ¶ 27. The subsequent four-month delay therefore weighs strongly against treating Plaintiff's present circumstances as an emergency.

**C. Plaintiff Fails to Adequately Describe Irreparable Harm Related to His Family.**

Plaintiff also cites separation from his ten-year-old U.S.-citizen son, who Plaintiff states has autism and depends on him for daily care and emotional support. Pl.'s Mot. at 2, 9, 17; Compl. ¶¶ 1, 6. The Government does not minimize this potential hardship. But the movant bears the burden of producing evidence showing that the asserted harm is certain, great, imminent, and beyond remediation.

The present motion fails to make that evidentiary showing. Plaintiff's brief does not establish where the child currently resides, who has cared for him during the more than four months since Plaintiff's departure, whether the child's other parent is present, or whether grandparents, adult relatives, guardians, or other family members in the United States are available to provide care. Without evidence addressing the child's actual current caregiving arrangement, the Court would have to speculate that Plaintiff's continued absence during this litigation creates a certain and imminent injury that no other caregiver can mitigate.

Judge Friedrich's reasoning in *I.G.I.* underscores why the lack of caregiving evidence is relevant here. Although the plaintiff there relied on prior findings that return to Guatemala was not in his best interest, the court held that circumstances had changed because "there is now an individual in Guatemala, Elias's father, who can care for and provide a stable home for him." *I.G.I.* Tr. 5:8–16. The court therefore rejected generalized allegations of emotional and educational harm as insufficiently certain and imminent. *Id.* at 4:23–5:20. Here too, Plaintiff must

establish the present facts concerning care, not simply rely on the seriousness of his child's diagnosis and the understandable emotional consequences of separation. He does not do so.

*Wilt* also illustrates why a generalized assertion of family dependence is insufficient. The plaintiffs there argued that the U.S.-based spouse was the sole caregiver for her ten-year-old child and needed her foreign-national husband in the United States to assist with medical care, childcare, and household expenses. *Wilt* Tr. 24:1–17, 25:9–26:10. The court found the record inadequate because those circumstances were longstanding and the foreign spouse had not previously been present in the United States providing that care. *Id*. at 25:9–26:24. Here, the Complaint alleges that Plaintiff's ten-year-old son has autism and "depends on his father for daily care and emotional support," Compl. ¶¶ 1, 39, but the Plaintiff's motion does not identify the child's present caregiver, establish that no other caregiver is available, or explain how the child has been cared for during Plaintiff's more-than-four-month absence. As in *Wilt*, the absence of that evidence prevents the Court from concluding that immediate return is necessary to avert certain and imminent irreparable harm.

### D. The Remaining Asserted Harms are not Certain, Great, Imminent, and Beyond Remediation.

Plaintiff's remaining irreparable harm argument consists of an assertion that he will "forever" lose the opportunity to seek cancellation of removal if not immediately returned. Pl.'s Mot. at 17. That assertion is not supported by a showing that denial of a TRO—as distinct from an ultimate adverse judgment—forecloses all future avenues for seeking immigration relief. The motion therefore does not establish the required causal link between denial of preliminary relief and an irremediable injury.

Nor does the alleged past due-process violation constitute per se irreparable harm. *See Alpine Securities Corp. v FINRA*, 121 F.4th 1314, 1333-34 (D.C. Cir. 2024) (rejecting argument

that Appointments Clause violation constitutes per se irreparable harm); *Hanson v. Dist. of Columbia*, 120 F.4th 223, 244 (D.C. Cir. 2024) (per curiam) (rejecting argument that Second Amendment violation constitutes per se irreparable harm and noting that "[e]ven in the sensitive areas of freedom of speech and religion, where the risk of chilling protected conduct is especially high, [courts] do not 'axiomatically' find that a plaintiff will suffer irreparable harm simply because it alleges a violation of its rights."); *but see Talbott v. United States*, 176 F.4th 720, 747 (D.C. Cir. 2026) ("That being said, the 'loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" (quoting *Mills v. Dist. of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009)).

Relying on a per se approach also skirts the standard for irreparable harm because it collapses the three distinct inquiries on a preliminary injunction. Indeed, taking a per se approach to irreparable harm any time there is a preliminary showing of a constitutional violation functionally returns this Court to the "sliding scale" approach that is incompatible with Supreme Court precedent. *See, e.g.*, *Starbucks Corp.*, 602 U.S. at 345-46 (citing *Winter*, 555 U.S. at 20). As another judge in this District has explained, contending that a "constitutional violation is always an irreparable injury . . . misstates the governing law," *Meta Platforms, Inc. v. FTC*, 723 F. Supp. 3d 64, 80 (D.D.C. 2024), because the "irreparable injury prong of the preliminary injunction inquiry focuses on the alleged *injury*—not on the cause of action," *id*. at 81 (emphasis in original). So, "a plaintiff must show 'that irreparable injury is likely in the absence of an injunction,' regardless of the plaintiff's likelihood of success on the merits of his claims." *Singh v. Carter*, 185 F. Supp. 3d 11, 20 (D.D.C. 2016) (quoting *Winter*, 555 U.S. at 22, and denying preliminary relief for failure to establish irreparable harm).

In *I.G.I.*, Judge Friedrich likewise rejected the proposition that every alleged constitutional injury is automatically irreparable. The court explained that the D.C. Circuit asks whether the alleged constitutional violation inflicts an injury that is certain and great, actual rather than theoretical, imminent, and beyond remediation. *I.G.I.* Tr. 6:13–7:11 (citing *Archdiocese of Washington v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018)). The court further distinguished prospective constitutional violations from alleged past violations and declined to adopt a rule that would transform every allegation of a past due-process violation into irreparable injury warranting preliminary relief. *See id*. at 7:12–19. Plaintiff's core allegation here is likewise a past event: the alleged unlawful departure in May. The existence of that claim does not dispense with the independent irreparable-harm requirement.

Several of Plaintiff's asserted harms also fail to align with the immediate remedy requested. The Complaint seeks not only return but eventual process before an Immigration Judge and an opportunity to pursue cancellation of removal. Compl. Prayer for Relief ¶¶ 1–3. *Wilt* rejected emergency relief in part because the requested visa-processing order would not necessarily produce the immediate medical, childcare, and financial assistance invoked as irreparable harm; a favorable adjudicatory process did not guarantee the ultimate immigration result. *Wilt* Tr. 27:24–29:10. Similarly, an order compelling Plaintiff's return before the merits are adjudicated is not necessary merely to preserve his ability to litigate the legality of the challenged departure, and Plaintiff has not shown that the Court could not fashion legally appropriate relief later if he ultimately prevails.

Because Plaintiff has not established irreparable harm, the Court may deny the motion on that basis alone. *CityFed*, 58 F.3d at 747; *see I.G.I.* Tr. 7:20–25 (declining to reach remaining preliminary-injunction factors after finding no irreparable harm).

## II. Plaintiff Has Not Made a Clear Showing of Likelihood of Success of the Merits.

### A. Plaintiff Cannot Seek Ultimate Relief in a Preliminary Posture.

"[I]t is generally inappropriate for a federal court at the preliminary injunction stage to give a final judgment on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 397 (1981). That is because a preliminary injunction "is a stopgap measure, generally limited as to time, and intended to maintain a status quo or 'to preserve the relative positions of the parties until a trial on the merits can be held.'" *Sherley v. Sebelius*, 689 F.3d 776, 781–82 (D.C. Cir. 2012) (quoting *Univ. of Tex.*, 451 U.S. at 395). The purpose of preliminary injunctive relief "is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579-80 (2017) (citation omitted). Thus, "[c]ourts in this Circuit have required the party seeking such a mandatory injunction to 'meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction.'" *Dallas Safari Club v. Bernhardt*, 453 F. Supp. 3d 391, 398 (D.D.C. 2020) (quoting *Singh*, 185 F. Supp. 3d at 17).

Plaintiff here seeks "to radically transform the status quo, on an expedited basis." *Disability Rts. Council of Greater Wash. v. WMATA*, 234 F.R.D. 4, 7 (D.D.C. 2006). What he truly seeks is to turn this preliminary injunction motion into "the whole ball game." *Winter*, 555 U.S. at 33. But preliminary injunctions are meant to be more predictive than they are decisive. *See Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety and Homeland Sec.*, 108 F.4th 194, 201 (3d Cir. 2024) (citing cases). Plaintiff seeks a preliminary injunction that required his return to the United States. That is essentially the same relief he seeks in the Complaint. Compl. (ECF. 1) at 22. At bottom, Plaintiffs seek to convert this action into a "hasty process" and ask the Court "to jump to conclusions." *Delaware State Sportsmen's Assoc.*, 108 F.4th at 200. That is simply not the purpose of preliminary injunctive relief. *See id.* at 197 (a

"preliminary injunction is not a shortcut to the merits"); *see also Appalachian Voices v. FERC*, 139 F.4th 903, 929 (D.C. Cir. 2025) (Henderson, J., concurring) ("The lodestar for interim relief is preserving the status quo—not previewing the merits.").

The Court should deny Plaintiffs' attempt to end-run the system and deny the motion on that basis alone.

**B. Plaintiff's Claims Fails to Justify an Order Compelling His Return.**

Plaintiff's merits presentation assumes that, if the Court ultimately concludes that his departure was unlawful, immediate facilitation of return necessarily follows. Pl.'s Mot. at 15–17. But a preliminary injunction requires a clear showing not merely that a legal theory may have merit, but that the movant is likely to succeed on the claim and is legally entitled to the particular preliminary remedy sought. *Winter*, 555 U.S. at 20–22. That burden is heightened in practical effect where the requested order is mandatory and would compel affirmative Government action to alter existing circumstances. *Farris*, 453 F. Supp. 2d at 78; *Pantoja*, 2022 WL 893017, at *1.

Plaintiff cannot succeed in this lawsuit because this Court cannot grant the relief requested and necessary in this case. Plaintiff concedes that he does not have lawful immigration status in the United States. Therefore, an order requiring his return would effectively supplant the Executive's role in deciding who may or may not be allowed to enter the country. Furthermore, because Plaintiff has no lawful immigration status in this country, the Court's order would necessarily require the Executive to affirmatively grant parole, which is a discretionary decision left to the Executive. And finally, Plaintiff cannot seek a judicial order requiring a law enforcement action. Ordering the Government to commence removal proceedings after ordering his return to the United States would do exactly that. Both the preliminary injunction order and a final judgment in this case would require the Court to micromanage the immigration proceedings of this one

individual, and that decision making is left to the Executive. For these reasons, Plaintiff lacks standing.

For a plaintiff to have standing, he must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. If a court lacks the authority to grant the injunctive relief requested, then a plaintiff's injuries are not redressable, and he therefore lacks standing. *See CREW v. Trump*, 438 F. Supp. 3d 54, 69 n.14 (D.D.C. 2020) (citing *Franklin v. Massachusetts*, 505 U.S. 788, 802–03 (1992) and *Swan v. Clinton*, 100 F.3d 973, 980–81 (D.C. Cir. 1996)). Awarding injunctive relief here would run into several roadblocks that this Court cannot correct and thus Plaintiff's ability to establish standing fails on the redressability prong.

To start, to rule in Plaintiff's favor the Court would have to effectively recognize that Plaintiff has a right to enter this country. But no such right exists. The Supreme Court has reiterated this principle numerous times, and it cannot be circumvented. *See, e.g.*, *Muñoz*, 602 U.S. at 902 ("[B]ecause [plaintiff], as a noncitizen, has no constitutional right to enter the United States, he cannot elicit that information or challenge the denial of his visa."); *Kerry v. Din*, 576 U.S. 86, 88 (2015) (Scalia, J., plurality) ("[Because [plaintiff] is an unadmitted and nonresident alien, he has no right of entry into the United States, and no cause of action to press in furtherance of his claim for admission."); *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) ("It is clear that [plaintiff] personally, as an unadmitted and nonresident alien, had no constitutional right of entry to this country as a nonimmigrant or otherwise."). The Court cannot order the return of an alien who has no status in the United States given that the control of the Nation's borders is vested in the political branches because that authority is "vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations," matters "exclusively

entrusted to the political branches of government." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952); *see also Zadvydas v. Davis*, 533 U.S. 678, 711 (2001) (recognizing that preservation of the political branches' authority to control the border serves "the obvious necessity that the Nation speak with one voice" on such matters); *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 730 (D.C. Cir. 2022) (recognizing that decisions "including the selection of a removed alien's destination, may implicate our relations with foreign powers and require consideration of changing political and economic circumstances.'" (quoting *Jama v. ICE*, 543 U.S. 335, 348 (2005))); *Mathews v. Diaz*, 426 U.S. 67, 81 (1976) ("the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government.").

Moreover, Plaintiff seeks an opportunity to seek cancellation of removal before an immigration judge, which would require the Court to order the government to initiate removal proceedings. *See* Pl's Mot. at 16. *See Reno v. Am.-Arab Anti-Discrim. Comm.* ("*AADC*"), 525 U.S. 471, 483-84 (1999) (discussing that the decision to commence proceedings represents the initiation of the deportation process, which is left to the Executive's discretion because it has the ability "to abandon the endeavor" whether it be for "humanitarian reasons or simply for its own convenience").

Contrary to Plaintiff's arguments, this case is nothing like *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501 (D. Md. 2025). Pl's Mot. at 13. There, the court ordered the plaintiff's return to the United States where the court found that "an administrative error" led to his removal to El Salvador. *Id.* at 507 n.3. This case is readily distinguishable. Plaintiff has not prevailed on any issues of removal.

The cases Plaintiff cites do not eliminate the need to establish the Court's authority and the elements of his own claims on this record. Plaintiff relies heavily on cases involving different statutory postures, removal orders, or adjudicated unlawful removals. Pl.'s Mot. at 15–16. Here, by contrast, the parties dispute the legal significance of the documents Plaintiff signed, the alleged withdrawal, the character of his departure, and the consequences that flow from those events. Those merits disputes should not be resolved through a mandatory TRO absent the clear showing *Winter* requires.

### C. Plaintiff's APA and Mandamus Theories Do Not Establish a Clear Right to the Relief Sought.

Plaintiff invokes the APA and Mandamus Act as bases for relief. Compl. Counts I–III, VIII. But the extraordinary remedy he seeks requires more than labeling the challenged conduct arbitrary, contrary to law, or ultra vires. To obtain mandamus, a plaintiff must identify a clear, nondiscretionary duty owed by the defendant and a clear right to performance. "To obtain a writ of mandamus, the petitioner must show, among other things, that the agency has violated 'a crystal-clear legal duty.'" *Karimova*, 2024 WL 3517852, at *3 (citing *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022), and *In re Nat'l Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022)). The motion does not identify a statutory command requiring Defendants, at this preliminary stage, to facilitate Plaintiff's admission or return to the United States on the timetable he demands.

Similarly, the APA does not itself supply an automatic entitlement to the specific mandatory remedy requested. Even assuming reviewability and assuming Plaintiff can identify final agency action, the remedial inquiry remains distinct from the merits of whether agency conduct was lawful. Plaintiff's motion largely collapses those questions and is insufficient for a

clear showing that immediate return is required before the Court resolves threshold and merits issues through ordinary litigation.

**D. The Alleged Past Due-Process Violation Does Not Establish Entitlement to Preliminary Relief.**

Plaintiff's Fifth Amendment theory concerns the process surrounding the April 29 signing of documents and his May departure. Compl. Count IV; Pl.'s Mot. at 14. But even if Plaintiff ultimately proves a past procedural violation, that does not establish that a TRO compelling immediate return is the necessary preliminary remedy. As Judge Friedrich explained, the irreparable-injury inquiry remains separate, and an alleged past due-process violation does not warrant preliminary equitable relief. *I.G.I.* Tr. 6:13–7:19. Plaintiff therefore cannot use the constitutional label attached to his merits claim to bypass the demanding preliminary-injunction standard.

**III. <u>The Balance of Equities and Public Interest Favor Defendants.</u>**

Where the Government is a party, the balance of equities and public-interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiff asserts that facilitating his return would impose only a minimal administrative burden. Pl.'s Mot. at 17–18. But the requested order would do substantially more than preserve the parties' positions while this case is litigated: it would require affirmative Government action to facilitate Plaintiff's entry into the United States and would effectively award a central component of the ultimate relief demanded in the Complaint. *See* Compl. Prayer for Relief ¶¶ 1(b), 2(e), 3(b). Therefore, the Court should decline to afford final relief at this preliminary posture. *See* § I.A.

The public has an interest both in lawful agency action and in orderly adjudication of disputed immigration claims under the procedures Congress has established. Indeed, it is well settled that the public interest in the enforcement of the United States' immigration laws is

significant. *See, e.g., United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *Nken*, 556 U.S. at 435. That includes ending the unlawful presence of an individual who would remain in the United States in violation of law. *See Nken*, 556 U.S. at 436 (relying on *AADC*, 525 U.S., at 490). In this case, the government's interests are further enhanced than in other cases. Plaintiff is a nonresident alien without any lawful status in the United States. The Supreme Court has long recognized that the political branches' broad power over immigration is "at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152–53 (2004). The power to admit or exclude aliens is a sovereign prerogative vested in the political branches, and "it is not within the province of any court, unless expressly authorized by law, to review [that] determination." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950); *see also Mandel*, 408 U.S. at 765–66 n.6 (noting that the Supreme Court's "general reaffirmations" of the political branches' exclusive authority to admit or exclude aliens "have been legion"). Control of the Nation's borders is vested in the political branches because that authority is "vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations," matters "exclusively entrusted to the political branches of government." *Harisiades*, 342 U.S. at 588–89. Preserving the political branches' authority to control the border serves "the obvious necessity that the Nation speak with one voice" on such matters. *Zadvydas v. Davis*, 533 U.S. 678, 711 (2001).

Granting mandatory return relief before the Court determines the legal effect of Plaintiff's alleged voluntary-removal documents, the alleged withdrawal, and the scope of the Court's remedial authority would displace that process. The equities therefore favor maintaining the existing circumstances while the Court adjudicates the merits on a developed record.

The motion also frames the equities almost entirely around Plaintiff's asserted harms without addressing the institutional consequences of compelling the Executive Branch to facilitate entry before a final determination that the law requires it. Because Plaintiff has not shown irreparable harm in any event, these considerations reinforce denial rather than justify extraordinary mandatory relief.

## IV. The Court Should Order Bond.

For the reasons stated above, the Court should deny Plaintiffs' motion in its entirety. Nevertheless, should the Court issue any injunctive relief, the Court should also order Plaintiffs to post security. Under Rule 65(c), the Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by the Government if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c). In the event the Court issues an injunction here, the Court should require Plaintiffs to post an appropriate bond commensurate with the scope of any injunction. *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) (a district court has "broad discretion . . . to determine the appropriate amount of an injunction bond").

## CONCLUSION

For these reasons, the Court should deny Plaintiff's motion.

Dated: September 25, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: *\/s/ Rashad Hussain*

RASHAD HUSSAIN
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-7725

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUAN CARLOS VELAZQUEZ,<br><br>Plaintiff,<br><br>v.<br><br>MARY DE ANDA-YBARRA, Field office Director, El Paso Office, U.S. Immigration and Customs Enforcement, et al.,<br><br>Defendant. | Civil Action No. 26-2941 (ACR) |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendants' Opposition to Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction and the entire record herein, it is hereby

ORDERED that Plaintiff's motion is DENIED.

SO ORDERED:

____________________
Date

________________________________
ANA C. REYES
United States District Judge